FARWELL *v.* BIGELOW.

112   285
e135  197
e135  208

112   285
p156  433
156   435

1. MORTGAGES—FORECLOSURE—AMOUNT OF DECREE.

The amount paid by a mortgagee for taxes, his reasonable attorney fees, and compensation for his services, are properly included in a decree of foreclosure, where the mortgage expressly provides for such charges.

2. SAME—MARSHALING OF SECURITIES.

A mortgagee cannot be required by judgment creditors of the mortgagor, who have levied upon all of the property covered by the mortgage, to resort first to a subsequent security taken by him for the same indebtedness on land situated in a foreign country, where it is not made to appear that he could do so without prejudice to his own rights.

Appeal from Wayne; Kinne, J., presiding. Submitted February 3, 1897. Decided April 6, 1897.

Bill by Jesse H. Farwell against Albert E. Bigelow, Charles A. Bigelow, and others, to foreclose a mortgage. From a decree for complainant, defendants Bigelow appeal. Affirmed.

*Chamberlain & Guise*, for complainant.

*James H. Pound*, for appellants.

MOORE, J. Prior to September, 1891, James A. Cook was engaged in the business of paving in Detroit. The defendant Calvin A. Cook was desirous that his contracts for paving should be successfully consummated. Mr. Farwell was possessed of a wide and varied experience in paving contracts. The two Cooks on June 29, 1891, made a written agreement with Mr. Farwell by which he undertook to aid them in getting money, by indorsing their paper for an amount not exceeding $24,000, to enable them to carry on their contracts; and he also agreed to give James A. Cook the benefit of his advice and experience, for which

Farwell was to be paid $3,000. On the same day, to
secure Mr. Farwell, certain paving contracts were assigned
to him. A similar contract was made September 29,
1891. On the last-named day, to further secure Mr. Far-
well, a mortgage was given to him by Calvin A. Cook
upon real estate in Detroit, and in Montmorency and
Otsego counties. This mortgage was recorded the same
day in Wayne county, and in the following month in the
counties of Montmorency and Otsego. The mortgage re-
cites that Mr. Farwell has indorsed certain paper, and
refers to the agreements already mentioned, and that
other indorsements are to be made and similar agreements
are to be entered into. The condition of the mortgage is
as follows:

"*Provided, always,* and these presents are upon the
express conditions, that if the party of the first part
shall and does well and truly indemnify and save harm-
less the said party of the second part of and from all dam-
age, loss, or liability arising from or connected with his
indorsement of said notes for five thousand ($5,000) dol-
lars and four thousand ($4,000) dollars, respectively, here-
inabove referred to, or of any note or notes given in
renewal of, or in the place or stead of, the same; and
if said Calvin A. Cook and James A. Cook shall well
and faithfully keep and perform all the covenants and
agreements to be kept and performed by them under the
terms of said contract or agreement entered into between
the said Jesse H. Farwell and the said James A. Cook
and Calvin A. Cook bearing date the 29th day of June, A.
D. 1891; and if the said Calvin A. Cook shall faithfully keep
and perform all the covenants and agreements to be kept
and performed by him under the terms of said certain con-
tract or agreement entered into between the said Jesse H.
Farwell and the said Calvin A. Cook bearing date the 29th
day of September, A. D. 1891, and shall indemnify and save
harmless the said Jesse H. Farwell from all loss or damage
under or by virtue of said contracts, or either of them; and
if the said Calvin A. Cook shall well and faithfully keep and
perform all the covenants and agreements to be kept and
performed by him under the terms of any similar con-
tracts that may be hereafter entered into between the said
Jesse H. Farwell and the said Calvin A. Cook, and shall

indemnify and save harmless the said Jesse H. Farwell from all loss, damage, or liability under or by virtue of such similar contracts that may be hereafter entered into as aforesaid, or any of them, and shall also pay and discharge, as the same shall become due, all existing indebtedness to the said Farwell, or indebtedness that may hereafter arise to the said Farwell, through or by reason of loans, advances, or materials furnished by the said Farwell to the said Cook, or in any other manner, and shall indemnify and save harmless the said Farwell for and on account of all indorsements made or hereafter to be made by the said Farwell for or on account of, or for the benefit of, the said Calvin A. Cook," etc.

Mr. Cook entered upon the business of paving, and Mr. Farwell helped him to procure money, and aided him with his advice. During the summer of 1891 the defendants Bigelow furnished Mr. Cook with lumber which entered into the construction of the paving. They received pay in part for the lumber furnished, but in April, 1893, Mr. Cook was in debt to them more than $3,000, for which they had sued him. On April 19, 1893, a judgment was rendered in their favor, and execution was issued. On December 12, 1893, a levy was made by them on the lands mortgaged to Farwell in Wayne county, and a little later a levy was made on the other lands covered by the mortgage. On December 31, 1892, Mr. Cook, to further secure Mr. Farwell, gave him a mortgage on lands in Ontario. April 4, 1893, Mr. Farwell and Mr. Cook had a settlement of their accounts, and agreed that the amount which was due Mr. Farwell under the terms of the mortgage was upwards of $23,000. As Mr. Cook did not pay, this proceeding was commenced to foreclose the mortgage given to Mr. Farwell. Before the decree was rendered in this cause, Mr. Farwell began proceedings to foreclose the Canadian mortgage, but this action did not result in a sale of the lands. The Bigelows were made defendants in the foreclosure proceeding begun in Wayne county, as they claimed an interest in the lands covered by the mortgage, by virtue of their levy. The bill of complaint contained the usual averments in a

foreclosure bill, and asked for the usual decree in a foreclosure proceeding. The Bigelows answered the bill, proofs were taken in open court, and a decree was entered according to the prayer of the bill. From that decree the Bigelows appeal.

In the answer filed by the Bigelows, they deny that Cook was indebted to complainant, and aver that Cook and complainant were, in law, copartners in the business, though Farwell, to shield himself from liability to the creditors,—the defendants among the number,—secreted that fact. It avers that complainant secretly caused the paving contracts to be assigned to him, and allowed the two Cooks to get supplies for paving on the credit of the paving contracts, which was a fraud upon them. They aver that Farwell has kept back sums that are usurious, that should have been used to pay for the supplies, and that the Cooks are not indebted to him as stated in the mortgage. They aver that their levies upon the land are superior in right to any right of the complainant, and ask for a decree upon that basis, and for such affirmative relief as the evidence in the case may show them to be entitled to. Though they did not ask for it in the answer, they now ask for a marshaling of the assets, and that the complainant shall be required to foreclose his Canadian mortgage and exhaust his other securities before he is allowed to enforce the lien given him by the mortgage he is foreclosing in this proceeding.

The record contains upwards of 160 pages, but there are not many questions involved therein. We are satisfied from the record that Mr. Cook was indebted to Mr. Farwell for the amount found to be due by the circuit judge, and that, by virtue of the mortgage he now seeks to foreclose, he has a lien upon the lands described therein. There was included in the amount found to be due Mr. Farwell a considerable amount for taxes paid by him. It is said they should not be included. The mortgage provided they should be paid and should be a lien. We think

they are properly included. See *Jehle* v. *Brooks, ante,* 131, and cases there cited.

An amount, too, was included for attorney fees paid by Mr. Farwell, and a large amount for his services. It is said that to include these was error. The contract between Mr. Farwell and Mr. Cook provided for just these charges. The mortgage was given to secure these, as well as other amounts, and we do not think it error to include them.

It is said that the proceedings in relation to the Canadian mortgage were such as to put the title of the property in Mr. Farwell; that the value of the property was sufficient to extinguish the indebtedness from Mr. Cook to him. We do not think this position tenable. The fair inference to be drawn from the testimony is that the proceeding to foreclose the Canadian mortgage resulted in what is known in Ontario as an "abortive sale," the effect of which is to confer upon the mortgagee, under the power of sale contained in the mortgage, the right to sell the land at private sale. The record shows that but little of the land has been sold, and that what has been sold has been accounted for by Mr. Farwell to Mr. Cook. The balance is held by Mr. Farwell, as mortgagee.

The important question is, should Mr. Farwell pursue his other securities before resorting to his security upon property in Detroit and in this State, even though the security is in a foreign jurisdiction? It is the claim of the solicitor for appellants that this question should be answered in the affirmative, and he cites 1 Pom. Eq. Jur. § 396; 3 Id. § 1414; *Trowbridge* v. *Harleston,* Walk. Ch. 185; *Mason* v. *Payne,* Id. 459; *Cooper* v. *Bigly,* 13 Mich. 463; *Southworth* v. *Parker,* 41 Mich. 198; *Sibley* v. *Baker,* 23 Mich. 312; *Gantz* v. *Toles,* 40 Mich. 725. None of these authorities sustain the contention of appellants, unless it may be *Trowbridge* v. *Harleston,* and the statement and opinion in that case are so very brief that it is difficult to say just what was decided by it. The other cases hold, in substance, "that if one

creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only,—as, for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another,—the former must seek satisfaction out of that fund which the latter cannot touch." The rule is, however, at once qualified by the statement: "These rules must be taken with the modifications and exceptions that in their application the paramount incumbrancer shall not be delayed or inconvenienced in the collection of his debt, for it would be unreasonable that he should suffer because some one else has taken imperfect security." 3 Pom. Eq. Jur. § 1414. And the rule must be so applied as to protect, not destroy, equities. *Southworth* v. *Parker, supra.* It was said by COOLEY, J., in speaking of the design and object of the rules for the marshaling of securities at the instance of subsequent incumbrancers:

"Those rules never assume to take from a prior incumbrancer any substantial right. Their purpose is to require the prior incumbrancer to enforce his just rights in such order of priority as, without loss to himself, will protect, as far as may be practicable, the subsequently acquired interests of others." *Sibley* v. *Baker,* 23 Mich. 315.

Justice MARSTON said:

"It is not sufficient that it appears a double security has been given, and that there is a junior incumbrance on a part of the property. It should be further made to appear that no injury will result from an enforcement of the rule; that the prior creditor's rights will not thereby be impaired." *Detroit Savings Bank* v. *Truesdail,* 38 Mich. 440.

See, also, *Webber* v. *Webber,* 109 Mich. 147.

In the case at bar, the mortgage sought to be foreclosed covers the same property, and no more, as is covered by the execution levy, so that it is doubtful if the doctrine of marshaling securities applies at all; but, if it be conceded

that it does, the defendants have not made such a case as to entitle them to the relief they pray. The Canadian mortgage was given a long time subsequent to the mortgage on the Michigan lands. The lands covered by it are in a foreign jurisdiction. It is not made to appear that the money could be realized from them as quickly as from the Michigan lands. The mortgage is not in evidence, and we do not know its terms. It is not made to appear that Mr. Farwell would not be prejudiced, if required to resort to the Canadian security first.

Decree is affirmed, with costs.

The other Justices concurred.