SHEEHAN v. FARWELL.

1. ATTORNEY AND CLIENT—MORTGAGES—FORECLOSURE—REDEMPTION.

An attorney holding a mortgage second to that of his client violates no obligation to his client by redeeming after the foreclosure of his client's mortgage and his retirement from the case.

2. JUDGMENTS—CANADIAN COURTS—CONFLICT OF LAWS.

Whether a judgment of a Canadian court affecting lands in

Michigan is conclusive in a suit between the same parties in this State,—*quœre*.

3. MORTGAGES—REDEMPTION—EVIDENCE.
Evidence reviewed, and *held* to justify a decree for the redemption of lands from a mortgage.

Appeal from Wayne; Rohnert, J.   Submitted October 7, 1903.   (Docket No. 5.)   Decided December 22, 1903.

Bill by Robert C. Sheehan against Jesse H. Farwell and Emer J. Farwell, impleaded with James A. Cook, special administrator of the estate of Calvin A. Cook, deceased, to compel the conveyance of certain real estate and for an accounting.   From a decree for complainant, defendants appeal.   Affirmed.

*Howard B. Bloomer* (*Alfred Lucking*, of counsel), for complainant.

*F. H. & G. L. Canfield* (*Chamberlain & Guise*, of counsel), for defendants.

MOORE, J.   This is an appeal from a decree granting the relief prayed for in the bill of complaint.   A reference to the case of *Farwell* v. *Bigelow*, 112 Mich. 285 (70 N. W. 579), will aid in understanding some of the questions presented in this record.

The bill of complaint is, in substance, as follows:

"That Calvin A. Cook, being indebted to Jesse H. Farwell in divers sums, and also accommodated by some indorsements, on the 29th day of September, 1891, gave a mortgage to Farwell covering lands in Wayne county and Montmorency county, Michigan, and afterwards, on the 31st day of December, 1892, Cook gave Farwell another mortgage, to secure the same indebtedness, on lands in Essex county, Ontario; that on August 1, 1894, Farwell began a foreclosure on the Michigan lands in the Wayne circuit court, in chancery, making Cook defendant, and also the Bigelows and Rea, on account of certain levies subsequent to the mortgage; that in May, 1896, prior to

the decree being taken in said chancery foreclosure, Farwell signed an agreement with Cook as follows:

"'SANDWICH, June 16, 1896.

"'For and in consideration of one dollar to me in hand and other valuable considerations from C. A. Cook, to wit, the signing of certain bills for expenses of foreclosing mortgages, etc., etc., in Michigan and Essex county, Ontario, I hereby agree to foreclose mortgages which I hold against said Cook on lands in Michigan, U. S., and in Essex county, Ontario, and hold the lands for two years for sale; if not sold then, to sell same at best price obtainable, subject to the approval of said Cook, retaining from sales what is due me on mortgages, and pay over all balances to said Cook or whom he may appoint or direct.

[Signed]   " 'JESSE H. FARWELL.'

"That on the 15th day of August, 1896, decree was granted by the Wayne circuit court fixing the amount due Farwell from Cook at $23,333, and ordering a sale of the lands in Wayne county and Montmorency county, Michigan; that on July 22, 1897, sale was had, and Farwell bid in the lands for $7,350; that those Michigan lands were worth $33,000; that on or before the 11th day of June, 1898, Farwell, in breach of the above-recited agreement, assumed to sell the lands in Essex county, Ontario, to his wife, Emer J. Farwell, for the sum of $25,000; that Farwell repudiated and denied the agreement of June 16, 1896, and denied all the rights of Cook in the Essex county lands and the Michigan lands.

"That on the 11th day of June, 1898, and prior thereto, Cook was a resident of Essex county, Ontario, and on that date he began suit in the high court of justice of the supreme court of judicature for Ontario against Farwell, and in his statement or bill of complaint set forth the substance of the facts hereinbefore set forth, and did pray relief as follows: To have Farwell declared trustee of the Michigan lands, and charging him with the value of the lands in the taking of the accounts between the parties, and that an accounting should be had between the parties, and that the defendant pay to the plaintiff whatever might be found to be the value of the Michigan lands over and above the indebtedness from Cook to Farwell, and that an order be made discharging the Ontario mortgage, made December 31, 1892, and releasing the Essex county lands to Cook, and for further and other relief, as the nature of the case required, and for costs of the action.

"The bill further alleges that service of process was duly had in said Canadian suit upon Jesse H. Farwell, and on the 8th day of September, 1898, he appeared by Patterson, Leggatt, Murphy & Sale, and filed his statement of defense or answer, wherein he admitted the mortgages referred to, denied the trustee agreement of June 16, 1896, set out above, admitted the sale of the Essex county lands to his wife, admitted he had bought the Michigan lands on foreclosure sale, and denied that Cook had any further interest either in the Ontario lands or the Michigan lands.

" That said Canadian court is a court of record, and one competent to hear, try, and determine said matters so pleaded; that subsequently, on October 20, 1898, Farwell was examined by Cook's solicitors before F. E. Marcon, deputy clerk of said court, each side appearing by counsel on said examination of Farwell, and Farwell was examined as a witness relative to the matters in issue, and his evidence was filed in said cause; that, after the said examination, Farwell admitted he held the lands as security only, and as trustee, and afterwards, on the 28th of October, 1898, an agreement was entered into in writing by which it was agreed that such Canadian suit should proceed to an accounting between Cook and Farwell, and that Farwell's wife should retain the Essex county lands, and in such accounting Farwell should be charged therefor the sum of $25,000; also that Cook should be entitled to a conveyance of the Michigan lands upon payment of the balance found due from Cook on such accounting, provided the same were paid to said Farwell or into said court to the credit of said action within six months from the amount being ascertained on said accounting.

" The bill further alleges that, in pursuance of such agreement, on November 9th a preliminary order was entered in said suit postponing the trial, and referring it to the master to take the accounting; that subsequently the parties proceeded with such accounting from time to time until November 4, 1899, when the master's report was filed in said cause, showing the items allowed and disallowed to the respective parties; that such proceedings were thereupon had in said action that afterwards, on the 8th day of June, 1900, upon the motion of defendant Farwell, a final judgment was entered in said cause (set forth in the bill) fixing the amount to be paid by Cook at $10,-224.77 as of the 4th day of June, 1900, and ordering the

same paid into court within six months from the date of the judgment, whereupon the defendant was to transfer the Michigan lands back to Cook, or to such person as he might appoint.

"That, in pursuance thereof, Cook appointed the complainant, Robert C. Sheehan, to pay the moneys into court, Cook having, for a valuable consideration, transferred and conveyed all his interests in the Michigan lands to Sheehan; that Sheehan, in pursuance of said appointment and judgment, on the 7th day of December, 1900, paid the money into court as directed by said judgment, with the interest, which said sum has ever since remained to the credit of Farwell; that subsequent to the entry of judgment June 8, 1900, Cook discovered overcharges in the accounting on the part of Farwell, and on the 9th of November, 1900, filed a petition for correction thereof; that such proceedings were had thereupon that such corrections were made, and a new final judgment entered on the 12th day of June, 1901, by which the former judgment was recited, the corrections made, the amount finally due Farwell fixed at $9,308.16, reciting the appointment of Sheehan to receive the conveyance of the Michigan lands, and reciting the payment of the money into court, and the holding of the same to the credit of Farwell, and directing a transfer of the Michigan lands to complainant, Sheehan, and that Sheehan was entitled to the conveyance.

"That said Canadian judgment was rendered in said action after full litigation upon the merits, and that said court had full jurisdiction of the parties and such subject-matter, and that it remains in full force, not vacated or set aside; that said moneys still remain to the credit of Farwell, but that he has hitherto refused to withdraw the same, and refused to transfer the Michigan lands as directed by the judgment; that Farwell has been an invalid for a year or more, and inaccessible to complainant or his agents; that the son, George Farwell, who transacted his father's business, refused even to be talked to concerning the matter. Complainant concludes by praying for an answer by the defendants, Jesse H. Farwell, Emer J. Farwell, and Calvin A. Cook, and for a conveyance of the Michigan lands, and that Jesse H. Farwell account for the rents, issues, and profits up to the time of the conveyance, and that the decree of the court stand as a conveyance, and for other and further relief.

" The answer of Jesse H. Farwell admits the allegations of the bill regarding the original indebtedness of Cook to Farwell, and the making of the mortgages, and the beginning of the foreclosure suit by Farwell in the Wayne circuit court. Says that he (Farwell)· has no recollection whatever of having signed or executed any such agreement as the one of June 16, 1896, but, according to the best of his knowledge and belief, denies the agreement. Admits the decree of the Wayne circuit court, the sale of the Michigan lands to himself under said decree as, alleged in the bill, and·the commissioner's deed to himself. Denies that the sale was made pursuant to the alleged agreement of June 16, 1896. Denies the value of said lands to be $33,000. Admits 'that he conveyed said Essex county lands to his wife for the nominal consideration of $25,000.' Denies that said conveyance was in breach of any agreement between him and Cook. Denies that Cook has any rights in either the Essex county lands or the Michigan lands. Admits the beginning of the Canadian suit. Admits that Patterson, Leggatt, Murphy & Sale appeared for him in said suit, but says he has been an invalid, and has no personal knowledge as to what proceedings were had therein, and therefore leaves complainant to his proofs, and shows that, if any order or decree was made in said cause as alleged in the bill, the same was not only without jurisdiction, but, as he is informed and believes, was collusive, fraudulent, and void. Says that the court had no jurisdiction to render any such decree, and that it is therefore void. Admits that he has refused to make such conveyance. Admits that his son George has attended to some of his affairs; and prays the same benefit of the answer as if he had demurred.

"Defendant, in an amendment to the answer, denied the transfer from Cook to complainant, Sheehan, and states he is informed that complainant never paid Cook any consideration for a conveyance, and, upon further information, shows that complainant has no actual interest, and is merely a nominal party, and that the suit is being prosecuted on behalf of John L. Murphy, who was solicitor for this defendant in the Canadian suit, and that the conduct of Murphy in seeking to enforce the decree is inequitable and in fraud of defendant's rights.

" The answer of Emer J. Farwell admits that she is the wife of Jesse H. Farwell, and in other respects is very similar to the answer of defendant Jesse H. Farwell.

"The answer of Calvin A. Cook was filed by his solicitor, in which he admits the allegations of the bill of complaint to be true. Calvin A. Cook died on the 19th day of June, 1902. His administrator and heirs at law were substituted of record."

Solicitors for defendants say:

"The case may be considered under the following heads:

"1. What effect is to be given to the Canadian judgment which is set up in complainant's bill, to enforce which the bill was filed?

"2. If that judgment is of any validity whatever, will this court enforce it, in favor of Murphy, under the peculiar circumstances disclosed in the record in this case?

"3. Does the record show any ground, aside from the Canadian judgment, on which the present bill can be sustained?

"4. What effect is to be given to the agreement of June 16, 1896, which complainant alleges was signed by Mr. Farwell, and which we denounce as a forgery?

"5. What effect is to be given to the agreements of October 28, 1898, either as sustaining the Canadian judgment or the decree of the court below?

"6. Has Sheehan any right to redeem the Michigan lands, or enforce a conveyance thereof from Farwell, even if we admit that such a right existed on the part of Cook?

"7. Of what effect has the Canadian judgment or said agreements on Mrs. Farwell's interest in the Michigan lands?"

Under the second head, counsel insist that Mr. Murphy is the real party complainant; that, when the Canadian judgment was rendered, he was a member of a legal firm that was acting for Mr. Farwell in the litigation; that he did not properly advise Mr. Farwell, or care for his interests; that Mr. Farwell was kept in ignorance of what was being done; and that Mr. Murphy's conduct has been such that this case ought to be dismissed. Mr. Murphy is criticised very bitterly by counsel, and we think without justification. It is true that Mr. Farwell has not for a long time been in good health. It is also true that, after Mr. Cook filed his bill in the Ontario court, the legal firm of

which Mr. Murphy was a member was employed to look after Mr. Farwell's interests. Mr. Farwell was a resident of Detroit. He employed a firm of Detroit lawyers to act in connection with the Ontario firm. Testimony was taken in the Ontario suit, including the testimony of Mr. Farwell, when it became manifest that it was wise to obtain a settlement with Mr. Cook, and negotiations were entered upon for that purpose. As a result of these negotiations, the following papers were signed:

"COOK & FARWELL.

"Memo. of Agreement of Settlement.

"1. The sale of the Sandwich lands to Mrs. Farwell to be confirmed and stand.

"2. The judgment herein to be for dismissal of the action, when this agreement has been made, except that an account be directed of the amounts advanced under the mortgages mentioned in the sixth paragraph of the statement of claim, and due for principal, interest, and costs thereon, after giving all proper credits. Such account to be taken before the master of this court at Windsor, and without a reference to the master in the suit. Should an adjournment be agreed to, then on consent.

"3. Each party to pay his own costs of this action.

"4. The defendant agrees and undertakes to convey the Michigan lands, free from incumbrances, to the plaintiff, or to whom he shall appoint, according to the result of such account, on payment of the amount found due on such account, provided the same be paid to him or into court to the credit of this action within six months from the amount being ascertained as aforesaid.

"5. In the event of nonpayment, the plaintiff to have no further right as to any of the lands remaining unsold, and default shall, to all intents and purposes, be as if he had been cut off and debarred by a valid decree of strict foreclosure.

"6. The portions of said lands sold by defendant, being the lot on 12th street, Detroit, and 40 acres in Montmorency Co., Michigan, to be allowed, and the sales to be approved and confirmed at the price at which they were sold. Plff. or his nominee to be allowed as part of this

agreement to have W. ½ of lot 13, Bl. 79, Woodbridge Farm, Detroit, at the price paid for same by Mr. Farwell, with interest at 6 per cent., and to buy same with the other lands above mentioned.

" Dated 28th October, 1898.

" C. A. COOK.

" PATTERSON, LEGGATT, MURPHY & SALE,
" Solicitors for Deft.

" JERRY G. FARWELL,
" For JESSE H. FARWELL.

" Witness: Oct. 29th, '98.
" JNO. SALE."

" SANDWICH, 28th October, 1898.

" C. A. COOK & JESSE H. FARWELL.

" In consideration of C. A. Cook having agreed to a certain settlement of the matters involved herein, dated today, and reserving an account of mortgage moneys, interest, and costs to plaintiff, it is agreed that defendant shall pay to plaintiff forthwith $500 cash in respect of his costs and disbursements. Defendant is to be at liberty to have trial of action adjourned till next court, instead of judgment for defendant, if he so desires, and judgment for defendant entered later, or at next sittings at Sandwich. The account mentioned in the agreement to be taken herein in the meantime, and the said agreement is to be considered part of this; neither party bound by previous admissions. Defendant is to sell to Cook or his assigns at the price fixed by the master. Each party pay his own costs of the reference. Above cash payment to be made on 29th October.

[Signed]        " C. A. COOK.
" PATTERSON, LEGGATT, MURPHY & SALE,
" Solicitors for Deft.

" JERRY G. FARWELL,
" For JESSE H. FARWELL."

After these papers were signed, the parties proceeded to an accounting before the master. Mr. Farwell himself made an affidavit November 16, 1898, showing what he claimed was the condition of the account. The master found there was due Mr. Farwell $198. In the hearing before the master, Jerry G. Farwell and George Farwell, men about 30 years old, sons of the defendants in this

case, Mr. Farwell's bookkeeper, and his Detroit lawyers were sworn as witnesses. Mr. Farwell, not being satisfied with the finding of the master, appealed to the judge. Upon that hearing a judgment of $10,224 was given in March, 1900, to Mr. Farwell, and George Farwell wrote from Detroit to the firm of which Mr. Murphy was a member that "the decision handed down in the Toronto court is very satisfactory indeed to us." Mr. Cook was not satisfied, and appealed to the high court of justice, in which court the action of the lower court was affirmed, and the case was remanded to the master to make the figures accordingly. In the meantime a legal firm in Toronto had been employed by Mr. Farwell to assist the other attorneys. May 19, 1900, George Farwell wrote Mr. Murphy's firm, among other things, as follows:

"We wish to be very careful about the wording of this judgment as it is made by the master, and you will receive instructions from Laidlaw & Kappele in this respect. * * *

"Kappele & Bicknell will write you fully, and wish you would consult freely with them as to idea of wording of this judgment. We have given O'Conner his own way in some matters, and in this we must watch our interests closely, and have judgment rendered to suit our position as nearly as we can."

On the same day Laidlaw, Kappele & Bicknell wrote Mr. Murphy's firm, among other things, as follows:

"The original judgment at the trial provides for further directions, and we do not see what further directions can be given other than those which are provided for in the agreement. This will involve a direction for payment into court of the amount found due, and for the conveyance of the Michigan lands on payment thereof within the limited time. We do not see any way by which the money can be obtained out of court, except upon the conveyance of the Michigan lands; and, if we see that the conveyance of those lands is inevitable if the money is paid, we had better have the judgment provide for the absolute foreclosure of all interest of the plaintiff in the lands in the event of the money not being paid."

The final order in the case followed the instructions of the Toronto lawyers. It was entered June 8, 1900. About this time Mr. Murphy and the Farwells had some trouble, about which the parties are not agreed, and Mr. Murphy's firm ceased to act longer for Mr. Farwell. The money was paid into court December 7, 1900.

Mr. Murphy's firm had a mortgage dated July 1, 1896, which was second to Farwell's mortgage, on Cook's Essex county lands, and it is Murphy's claim he consented to Mrs. Farwell's getting title to these lands upon Farwell's promise to take care of the second mortgage. The Farwells deny this. Murphy claims:

" As Farwell's mortgages for the same debt covered both Michigan and Ontario lands, while Murphy's second mortgage covered only the Ontario lands, Murphy, under well-settled equitable rules, had the right of redemption in the Michigan lands as well as in the Ontario lands. To enforce this right he took from Cook on the 3d day of July, 1900, a declaration recognizing this right of redemption of the Michigan lands, and then Murphy proceeded to make arrangements to assist to raise the money to pay off Farwell's first mortgage. This was all done after the entry of the final judgment in favor of Farwell, and after Murphy had retired from the case and brought suit against Farwell for his services."

There is nothing in the record to indicate that Mr. Murphy did anything he had no right to do.

Defendant Farwell claims the agreement of October 28, 1898, was not signed by him, was not authorized by him, and was not known to him, and that he should not be bound by it. In addition to what has already been stated, the record shows that, before this agreement was made, its terms were talked over at Mr. Farwell's house, and one of the Detroit lawyers suggested a provision to be put into it. It is true, he says it was not signed by Mr. Farwell, and it was not, in his presence, consented to by him. It also appears that, at the time these papers were signed, a sum of money was to be paid to Mr. Cook. Mr. Farwell signed a check in blank, which was to be filled up and de-

livered to Mr. Cook by the son Jerry. It was so signed and delivered, and Jerry's testimony is that he told his father what was done. We have no doubt, from what appears in the record, that Mr. Farwell authorized this agreement to be made, and was fully advised of all the steps taken in this litigation.

The remaining questions may be treated together. On the part of the complainant it is insisted the judgment of the Canadian court is conclusive, and should control here. Counsel say:

"Outside of New Jersey, all other courts, we believe, hold the judgment or decree to be conclusive as to all matters litigated, including the right to a conveyance or lease of the lands in the other States or countries. *Dunlap* v. *Byers*, 110 Mich. 113, 117 (67 N. W. 1067); 2 Black, Judgm. § 872; *Burnley* v. *Stevenson*, 24 Ohio St. 474 (15 Am. Rep. 621); Whart. Confl. Laws, § 288; *Cheever* v. *Wilson*, 9 Wall. 108; *Noble* v. *Grandin*, 125 Mich. 383 (84 N. W. 465). See, also, *Ferguson* v. *Oliver*, 99 Mich. 161 (58 N. W. 43, 41 Am. St. Rep. 593)."

They also cite a decree made in Canada to enforce a decree made in this court in the case of *McGregor* v. *McGregor*, 130 Mich. 505 (90 N. W. 284). In this case Falconbridge, C. J., speaking for the court, said:

" (1) An undivided half interest in the Windsor real estate is a partnership asset, and, on the winding up of the affairs of the partnership, the proceeds thereof are first applicable in discharge of the debts of the firm, and then of what may be due to the partners, respectively, after deducting what may be due from them as partners to the firm; *i. e.*, the claims of one partner against the other on an accounting. 2 Lind. Partn. (5th Ed.) p. 352.

" (2) Therefore it is liable to answer the amount which, under the judgments of the Michigan courts, will be payable to Thomas McGregor.

"(3) *For the decree of the Supreme Court of Michigan should be held binding upon these parties in this court. The parties were all within the jurisdiction of the foreign court, and, as defendant John McGregor invoked and submitted to the jurisdiction of that court, he has precluded himself from setting up want of juris-*

*diction. Swaizie* v. *Swaizie*, 31 Ont. 324.    And, if any amendment be necessary, it will be granted.

" (4) The Windsor real estate did not cease to be partnership property on the withdrawal of John McGregor, Sr., or at the death of Donald McGregor.   The evidence does not show any agreement or other state of facts whereby there was any severance of the partnership interest of John and Thomas in the undivided one-half remaining.

" (5) The deed to Elizabeth McGregor was given *pendente lite*, with full notice to her, and without consideration, *and is bound by the judgment subjecting the conveyance to her to the lien of Thomas McGregor*.    Being admittedly voluntary and without consideration, it is also fraudulent and void against Thomas McGregor in respect of his lien on the partnership property, and also fraudulent and void against Thomas McGregor and other creditors of John McGregor in respect of the undivided interest of John McGregor not subject to the lien.    Leave to plaintiffs to amend as to these two-twentieths by suing on behalf of themselves and all other creditors of John McGregor.

" (6) The defendant Elizabeth McGregor is not entitled to dower, because the land is a partnership asset, and because she now holds the property in her own name; the conveyance being still good as between her and her husband.    Judgment generally in favor of plaintiffs for partition or sale, with declarations in accordance with the above findings.    Defendants John McGregor and Elizabeth McGregor to pay costs of action of plaintiffs and defendant Jane McBride." *McGregor* v. *McGregor*, 2 Ont. Wky. R. 96.

It is also claimed that, irrespective of the Canadian judgment, complainant has made a case entitling him to the decree rendered in the court below.

On the part of the defendants it is insisted the Canadian court was without jurisdiction of the subject-matter, and its decree is void.    It is said the effect of the decree of the Canadian court is to overrule the decree of this court in *Farwell* v. *Bigelow*, 112 Mich. 285 (70 N. W. 579).    It is also said the judgment of the Canadian court in respect to the Michigan lands is not *res judicata* or binding, because it is not based upon any issue made by the plead-

ings; that especially is this true as to Mrs. Farwell, who was never a party to that suit. It is also urged that foreign judgments are impeachable for fraud, and that the Canadian judgment was obtained by fraud. It is also said Farwell is not estopped to deny the validity of the Canadian decree by reason of anything that took place after the settlement of October 28, 1898; that complainant is not entitled to recover, because he shows no title to the lands; that Mrs. Farwell cannot be deprived of her rights of dower in the Michigan lands by any agreement Mr. Farwell might make subsequent to the confirmation of the Michigan foreclosure sale, nor by the Canadian decree, as she was not made a party.

In our view of the case, it is not necessary to decide just how far we should go to enforce a decree made by a Canadian court affecting lands in Michigan. A consideration of the entire record convinces us that Mr. Farwell signed the agreement of June 16, 1896, and that the sale of the Michigan lands and the confirmation thereof were made, Mr. Cook expecting this agreement to be carried out; that later Mr. Farwell, ignoring this agreement, caused the Canadian lands to be sold to his wife for the nominal sum of $25,000, and that, after this was done, he denied that Mr. Cook had any interest in either the Michigan or Canadian lands; that Mr. Cook then commenced the litigation as set out in the bill of complaint; that afterwards the agreement of October 28, 1898, was made, with Mr. Farwell's knowledge and consent, and the proceedings resulting in a decree as before stated were subsequently had. The parties are now all before this court. The Michigan mortgage foreclosure; the agreement of June 16, 1896; the sale of the Michigan lands; the sale of the Essex county lands to Mrs. Farwell; the commencement of the litigation in the Canadian court by Mr. Cook against Mr. Farwell; the agreement of October 28, 1898, and the subsequent proceedings thereunder resulting in the decree in the Canadian court; the payment of money into court,— all grow out of the security, and the attempt to enforce it

by Mr. Farwell, which was given to him by Mr. Cook upon the Canadian lands as well' as the Michigan lands. The record discloses that the complainant, by the act of Mr. Cook in writing, now occupies his place, and has succeeded to his rights. Mr. Cook was made a party defendant to this suit. He did not, nor does his representative since his death, question the right of complainant to a decree. Mrs. Farwell paid no money for her claimed rights·· of dower in the Michigan lands. By virtue of the agreement of October 28, 1898, and the subsequent proceedings thereunder, the dispute in relation to her title to the Essex county lands is ended. We think, by a strong preponderance of evidence, the complainant has established such a state of facts as to entitle him to the relief granted in the court below. See *Weed* v. *Terry,* 2 Doug. (Mich.) 344 (45 Am. Dec. 257); *Id.,* Walk. Ch. 501; *Farwell* v. *Johnston,* 34 Mich. 342; *Carmichael* v. *Carmichael,* 72 Mich. 76 (40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528); *Daniels* v. *Lewis,* 16 Wis. 140; *Paine* v. *Wilcox,* Id. 202; *Slingerland* v. *Slingerland,* 39 Minn. 197 (39 N. W. 146).

The decree is affirmed, with costs.

CARPENTER, GRANT, and MONTGOMERY, JJ., concurred. HOOKER, C. J., took no part in the decision.