In the Matter of DEALER SUPPORT SERVICES INTERNATIONAL, INC., Softsol, Inc., Tech Leasing, Inc., Debtors.

Bankruptcy Nos. 86–01136–B, 86–01135–B and 86–01134–B.

United States Bankruptcy Court, E.D. Michigan, S.D.

April 24, 1987.

Schafer and Weiner, P.C. by Daniel J. Weiner, Birmingham, Mich., for trustee.

Kurt L. Jones, Clawson, Mich., for Secured Creditor.

## MEMORANDUM OPINION

GEORGE BRODY, Chief Judge.

Tech Leasing, Inc., Softsol, Inc., and Dealer Support Services International, Inc. filed voluntary Chapter 7 cases on March 18, 1986. On April 10, 1986, an Order of Substantive Consolidation for the three cases was entered. Prior to the filing of the petition in bankruptcy, Softsol, Inc. borrowed $40,017.00 from the Michigan National Bank—North Metro. As security for the loan, the bank obtained a security interest in all the assets of Softsol, Inc. In addition, the loan was guaranteed by Ramesh C. Vattikuti, the principal stockholder of Softsol, Inc., and his wife, Asha Vattikuti. As collateral for their guaranty, the Vattikuti's gave the bank an assignment of their interest in a home which they were purchasing on land contract. The trustee of the consolidated debtors sold the assets of Softsol, Inc., which were subject to the bank's security interest, pursuant to court order for $240,000. The bank's lien of approximately $32,000 was transferred to the proceeds of sale. The bank filed a motion to compel the trustee to pay over the amount due and owing to the bank from the proceeds of sale. In reply, the trustee requested that the court invoke the doctrine of marshaling of assets and compel the bank to first proceed against the Vattikuti's as guarantors to satisfy its obligation prior to enforcing its lien against the assets of the debtor.

> Marshaling is an equitable doctrine. It is ..., designed to promote fair dealing and justice. Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties.

*Meyer v. United States,* 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963). The doctrine applies in cases in which a

creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only,—as, for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another,—the former must seek satisfaction out of that fund which the latter cannot touch.

*Farwell v. Bigelow,* 112 Mich. 285, 290, 70 N.W. 579 (1897).

"Traditionally, the equitable doctrine of marshaling has been used by secured creditors, but has not been available to unsecured creditors. *The Edith'*, 94 U.S. [4 Otto] 518, 24 L.Ed. 167 (1877)." [1] *In re Francis Construction Co.,* 54 B.R. 13, 14 (Bankr.D.S.C.1985). The initial question, therefore, is whether the trustee as the representative of unsecured creditors has standing to compel marshaling. The trustee maintains that by virtue of Section 544(a),[2] he is deemed to be a secured creditor and therefore has the requisite standing. Some courts agree on the ground that "[n]either the language of the statute nor its legislative history gives the slightest indication that Congress contemplated that such 'strong arm' rights and powers are not to apply in a marshaling context." *Fundex Capital Corp. v. Balaber-Strauss (In re Tampa Chain Co.),* 53 B.R. 772, 777 (Bankr.S.D.N.Y.1985). Others disagree, holding that:

> [t]o allow the Trustee to invoke the marshaling doctrine, by virtue of his status as a hypothetical lien creditor, would be a use of the strong-arm clause not contemplated by Congress. In this Court's opinion, the Trustee's construction would frustrate the Code's policy by enriching unsecured creditors over secured creditors.

*Federal Land Bank v. Tidwell (Matter of McElwaney),* 40 B.R. 66, 70–71, 10 Collier Bankr.Cas.2d (MB) 810 (Bankr.M.D.Ga. 1984). However, it is not unnecessary to decide the standing question, because even if the trustee has standing to request marshaling, there is no merit to his request.

█ For the doctrine to apply there must be at least two secured creditors of the same debtor, two funds or potential funds belonging to the debtor, with one of the creditors having recourse to both funds, and the other creditor having access to only one of the funds. *In re United Retail Corp.,* 33 B.R. 150, 153 (D. Hawaii 1983); *People's Bank v. Computer Room, Inc. (In re Computer Room, Inc.),* 24 B.R. 732, 734 (Bankr.N.D.Ala.1982). *See also, Farmers & Merchants Bank v. Gibson,* 7 B.R. 437, 439 (Bankr.N.D.Fla.1980); *In re Beacon Distributors, Inc.,* 441 F.2d 547, 548 (1st Cir.1971); *DuPage Lumber & Home Improvement Center Co. v. Georgia-Pacific Corp. (In re DuPage Lumber & Home Improvement Center Co.),* 34 B.R. 737, 740 (Bankr.N.D.Ill.1983); *Whirlpool Corp. v. Plad, Inc. (In re Plad, Inc.),* 24 B.R. 676, 679 (Bankr.M.D.Tenn.1982); *In re Computer Room, Inc.,* 24 B.R. 732; *Stuhley v. United States Small Business Admin. (In re United Medical Research, Inc.),* 12 B.R. 941, 943 (Bankr.C.D.Cal. 1981); *Central Trust Co. v. Burchett*

---

**1.** Generally, marshaling is sought by a secured creditor who would be left without security if marshaling were not ordered. Thus in the usual case, if marshaling is ordered, the fund available for unsecured creditors is diminished.

**2.** (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

*(Matter of Willson Dairy Co.)*, 30 B.R. 67, 71 (Bankr.S.D. Ohio 1983).

The requirement that both funds be in the hands of a common debtor is not merely a formal or technical requirement; rather, it limits marshaling to cases for which the marshaling doctrine purports to provide the rule of decision.... When guarantors and other debtors are added to the picture, then new questions arise. The marshaling doctrine simply does not purport to provide a rule for deciding whether a junior mortgagee can require the senior mortgagee to satisfy its claim out of the assets of a second debtor.

*In re DuPage Lumber & Home Improvement Center Corp.*, 34 B.R. at 740–41. Clearly, the requirement that both funds be in the hands of a common debtor is not met where the funds to be marshaled are held "separately by a corporation and its shareholder even though [the shareholder] guaranteed the corporate debt." *In re Tampa Chain Co.*, 53 B.R. at 778. However, under certain circumstances the property of the guarantor shareholder may be considered property of the corporate debtor, thus satisfying the "common debtor" requirement. These circumstances are summarized in *Coors of North Mississippi, Inc. v. Bank of Longview (In re Coors of North Mississippi, Inc.)*, 66 B.R. 845, 867 (Bankr.N.D.Miss.1986), as follows:

Exceptions to the "common debtor" rule have been developed when mandated by equity. *DuPage Lumber & Home Improvement Center Co., Inc. v. Georgia-Pacific Corp.*, 34 B.R. 737, 740 (N.D. Il.1983). One exception is where a shareholder has treated the corporation as an "alter ego", thus giving reason for the court to pierce the corporate veil to hold the stockholder liable for a corporate debt. Another exception occurs where a stockholder holds property or a claim against the corporation that equitably

should be deemed a contribution to the capital of the corporation. *Gibson*, at 440. Yet another instance occurs where the stockholder has engaged in some inequitable conduct. *In re United Medical Research, Inc.*, 12 B.R. 941, 943 (Bankr. C.D.Ca.1981).

However, there has been no allegation that the guarantor shareholders are guilty of any conduct that would justify treating the real estate of the guarantors as property of the debtor.[3]

■ The trustee, however, urges that the court ignore the "common fund" requirement, because unsecured creditors will receive nothing unless marshaling is compelled. As authority for this approach, the trustee relies on *Berman v. Green (In re Jack Green's Fashions for Men—Big & Tall)*, 597 F.2d 130, 5 B.C.D. (CRR) 193 (8th Cir.1979). In *Jack Green's*, a bank held a security interest in the business assets of a corporate debtor and a mortgage on real estate owned by the controlling shareholders of the debtor. The trustee filed an application in the bankruptcy court for an order to compel the bank to first proceed against the property of the shareholders before resorting to the debtor's corporate assets. The Bankruptcy Court granted the trustee's application, and its ruling was upheld by the District Court. The Court of Appeals affirmed, relying on the unpublished District Court opinion. *Jack Green's* has been severely critized by commentators and rejected by several bankruptcy courts. *See, e.g. Matter of McElwaney*, 40 B.R. 66; *In re Computer Room, Inc.*, 24 B.R. 732; *In re Plad*, 24 B.R. 676; *In re United Medical Research, Inc.*, 12 B.R. 941; Weintraub and Resnick, *Compelling a Senior Lienor to Pursue Remedies Against a Guarantor—A Misapplication of the Marshaling Doctrine*, 18 U.C.C.L.J. 367 (1986); Weintraub and Resnick, *Subordination of the Guarantor's Subrogation Rights—The Marshaling Doctrine Revisit-*

---

3. Moreover, if the real estate of the guarantor were treated as property of the estate, there would be no need to marshal to achieve the trustee's objective. The trustee in this action seeks to enlarge the estate for the benefit of unsecured creditors. That purpose would be accomplished if the guarantor's property were held to be property of the estate. The benefit to unsecured creditors would accrue not by virtue of marshaling, but by virtue of bringing the guarantor's property into the estate.

*ed,* 18 U.C.C.L.J. 364 (1986); Labovitz, *Marshaling Under the UCC: The State of the Doctrine,* 99 Banking L.J. 440, 446 (1982). The only rationale for affirmance which appears in the opinion of the Court of Appeals is the court's equitable concern that unless the bank were compelled to first exhaust its remedies against the grantor, there would be nothing for unsecured creditors.

> [I]t would be in the highest degree inequitable to allow the Bank to exhaust the business assets of the corporate bankrupt without first looking to the real estate mortgaged to it. To permit such a course would leave the general creditors of the business with nothing.

*Jack Green's,* 597 F.2d at 133. However, "[i]t is poor policy for courts to upset legitimate business transactions because of some vague concept of equity." *In re United Medical Research, Inc.,* 12 B.R. at 943. As the court in *Matter of Samuels & Co.,* 526 F.2d 1238, 1242 (5th Cir.), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976), observes:

> We do not sit as federal chancellors confecting ways to escape the state law of commercial transactions when that law produces a result not to our tastes. Doing what seems fair is heady stuff ... Today's heady draught may give the majority a euphoric feeling, but it can produce tomorrow's hangover.

Moreover, it is generally recognized that marshaling should not be ordered if the creditor compelled to marshal will be prejudiced. *Westinghouse Credit Co. v. Central Trust Co. (In re Leonardo),* 11 B.R. 453 (Bankr.W.D.N.Y.1981); *In re United Retail Corp.,* 33 B.R. at 153; *Farwell v. Bigelow,* 112 Mich. at 290, 70 N.W. 579. In the absence of marshaling, the bank's debt can be immediately satisfied out of funds held by the trustee. In contrast, if marshaling were ordered, unless the guarantors paid the note, the bank would have to institute foreclosure proceedings, pay off the balance of the existing land contract, and suffer the inherent delays and expense of a foreclosure proceeding. To compel marshaling under these circumstances would clearly prejudice the bank. Not only

would the bank be prejudiced if marshaling were ordered, but the creditors of the nondebtor would also be prejudiced in that they would not be able to look towards a principal asset of the guarantor for payment of their debts. *See, Meyer v. United States,* 375 U.S. at 237, 84 S.Ct. at 321; *Duck v. Wells Fargo Bank (In re Spectra Prism Industries, Inc.,* 28 B.R. 397, 399 (Bankr. 9th Cir.1983). No persuasive argument has been offered as to why the unsecured rights of the creditor of a debtor estate should be preferred over the creditors of the nondebtor. *In re United Medical Research,* 12 B.R. 941.

Finally, marshaling, under the circumstances here, would not accomplish the purpose for which it is sought.

> It is well settled that where one secondarily liable is called on to make good on his obligation and pays the debt, he steps into the shoes of the former creditor. He becomes subrogated to all the rights of the creditor against the principal debtor, including the security given to secure the debt.

*Allen v. See,* 196 F.2d 608, 610 (10th Cir. 1952); *Bethlen Mfg. Co. v. First National Bank,* 472 P.2d 703, 706 (Colo.App.1970). Thus, if the bank were compelled to first seek payment of the debt under the guaranty and the guarantors paid the bank's claim, the guarantors would be subrogated to the rights of the bank against the debtor, unless the guarantors were guilty of conduct which would justify subordinating the guarantors' subrogated claim. *See,* 11 U.S.C. § 510(c); *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 700 (5th Cir.1977); *In re Tampa Chain Co.,* 53 B.R. at 779. The trustee has not alleged that the guarantors are guilty of any such conduct. Thus, ordering marshaling would be an exercise in futility. *See, In re Tampa Chain Co.,* 53 B.R. at 779; *In re United Medical Research, Inc.,* 12 B.R. at 944.

An appropriate order is to be submitted for entry.