**In the Matter of MEL–O–GOLD, INC., Debtor.**

**Bankruptcy No. 87–2335.**

United States Bankruptcy Court, S.D. Iowa.

June 29, 1988.

Mark S. Lorence, Des Moines, Iowa, for debtor.

Bruce J. Toenjes, Des Moines, Iowa, for Meinerz Creamery, Inc.

David L. Davitt, Des Moines, Iowa, for Norwest Bank, N.A.

## ORDER—MOTION FOR ORDER REQUIRING MARSHALING AND MOTION FOR ORDER REQUIRING TRUSTEE TO ABANDON PROPERTY

RUSSELL J. HILL, Bankruptcy Judge.

On March 21, 1988, a hearing was held on motion for order requiring marshaling and motion for order requiring trustee to abandon property. Bruce J. Toenjes appeared on behalf of the movant creditor Meinerz Creamery, Inc. (hereinafter "Meinerz"). Mark S. Lorence appeared on behalf of Debtor. David L. Davitt appeared on behalf of creditor Norwest Bank Des Moines, N.A. (hereinafter "Norwest"). Also appearing was Robert D. Taha, Trustee.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court, upon review of the pleadings, evidence, and briefs, now enters its findings and conclusions pursuant to F.R.Bankr.P. 7052.

### FINDINGS OF FACT

1. Debtor filed a Chapter 7 petition on September 18, 1987. Debtor previously filed a Chapter 11 petition on August 17, 1984, but the case was dismissed on March 25, 1986. Debtor filed a second Chapter 11 petition on May 30, 1986, and that case was dismissed on April 28, 1987.

2. Norwest is Debtor's only secured creditor, and has filed a proof of claim for $14,615.13.

3. Meinerz is one of approximately 75 unsecured creditors listed in Debtor's schedule A–3. Meinerz filed a proof of claim for $11,696.83 in principal plus $2,949.30 in pre-petition interest on account of a February 24, 1984, default judgment against Debtor which remains unsatisfied. In its proof of claim, Meinerz noted that if it is successful in its motion for order to abandon reflecting its alleged right to $3,250.00 which was returned to Debtor as a preference in an earlier chapter 11 case that was dismissed, its claim is $8,446.83 principal on the unsatisfied judgment and $2,612.73 in pre-petition interest as provided in the judgment.

4. Norwest has a security interest in, among other things, Debtor's inventory, accounts receivable, equipment, and general intangibles, and a mortgage on real estate owned individually by Virgil and Edith Wickert, shareholders and guarantors of the Debtor.

5. At the date of filing, Debtor valued its accounts receivable at $24,312.85, and also conducted a post-petition inventory which totaled $69,267.28. On or about April 4, 1988, Trustee sold said inventory to Virgil Wickert for $7,000.00.

6. The real estate owned by the Wickerts which secures Debtor's obligation consists of the Wickerts' homestead and a separate structure which the Wickerts rented to Debtor and from which Debtor conducted its business.

7. On January 14, 1988, Meinerz filed a motion requiring trustee to abandon property. In said motion, Meinerz argued it was entitled to $3,250.00, which allegedly revested in Meinerz, pursuant to § 349(b)(3), upon dismissal on March 25, 1986, of Debtor's first chapter 11 petition which was filed August 18, 1984. Said amount reflected a preference payment that Meinerz was ordered to turn over to Debtor's estate.

8. On January 14, 1988, Meinerz also filed a motion for order requiring marshaling of assets by Norwest. In said motion, Meinerz stated that Norwest was secured by collateral including, among other things, Debtor's inventory, accounts receivable and proceeds plus real estate owned by Virgil and Edith Wickert, guarantors of Debtor's obligation to Norwest. Meinerz further argued that since only Norwest could pursue

the real estate, it should be required to exhaust that exclusive fund before proceeding against the fund (inventory, accounts, proceeds, etc.) that is also available to the unsecured creditors and trustee.

9. On February 8, 1988, Norwest filed a resistance to each motion. Concerning the motion to abandon, Norwest argued the funds described are the proceeds of Debtor's accounts receivable, subject to Norwest's security interest, and that no proceeding has divested Norwest's right to such funds. Concerning the motion for marshaling, Norwest argued the real estate in question is not property of any bankruptcy estate, Meinerz lacks standing to assert the marshaling claim, and general principles of equity prevent marshaling because the real estate is Wickerts' homestead.

10. On March 10, 1988, Debtor filed a resistance to the motion to marshal. In said resistance, Debtor made the same arguments as Norwest in its February 8, 1988, resistance.

## DISCUSSION

The two issues presented in this case are: 1) whether Meinerz is entitled to an order requiring marshaling; and 2) whether Meinerz is entitled to an order requiring trustee to abandon property.

### Marshaling of Assets

The leading case dealing with the doctrine of marshaling is *Meyer v. United States*, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963). In *Meyer*, the Court stated:

> The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.

*Id.* at 236–237, 84 S.Ct. at 321. Further, the Court pointed out that marshaling is bottomed in the law of equity. *Id.* at 237, 84 S.Ct. at 321.

■ Bankruptcy Rule 7001(7) defines an adversary proceeding as a proceeding "to obtain ... equitable relief." As noted above, marshaling is bottomed in equity. Therefore, any action requesting the equitable remedy of marshaling must be brought as an adversary proceeding under part VII of the bankruptcy rules.

■ In the case at bar, however, Meinerz requested marshaling through an ordinary motion. In its brief, Meinerz contends that a request for marshaling may also be considered in other contexts that do not require the filing of an adversary proceeding. However, none of those context listed as examples are present in the case at bar. Meinerz seeks marshaling on its own initiative, not in response to any type of motion filed by another party. Therefore, since Meinerz has failed to properly bring this matter before the Court as an adversary proceeding, the Court lacks jurisdiction to determine Meinerz's request for marshaling.

Assuming arguendo the Court does have jurisdiction, Meinerz is still not entitled to an order requiring marshaling because the necessary elements to impose marshaling are not present.

■ Before the Court can order marshaling, the following elements must be present: 1) two or more secured creditors with the same debtor; 2) two funds or potential funds belonging to that debtor; and 3) one creditor can reach both funds while the other creditor can reach only one of the funds. *In the Matter of Dealer Support Services Int'l, Inc.*, 73 B.R. 763, 764 (Bankr.E.D.Mich.1987) (citations omitted); *In re Francis Const. Co., Inc.*, 54 B.R. 13, 14–15 (Bankr.D.S.C.1985). In the case at bar, the third element for marshaling is clearly met because Norwest can reach both funds while Meinerz can reach only one of the funds. Therefore, the Court must determine if the first two elements are also present.

■ Traditionally, marshaling has been used by secured creditors and has not been available to unsecured creditors. *Dealer Support*, 73 B.R. at 764; *Francis Const.*, 54 B.R. at 14 (citations omitted). At least one court has made marshaling available to

unsecured creditors. *In re Jack Green's Fashions for Men–Big and Tall,* 65 B.R. 317 (Bankr.W.D.Mo.1978), *aff'd,* 597 F.2d 130 (8th Cir.1979). However, *Jack Green's* has been severely criticized by commentators and rejected by numerous bankruptcy courts. *Dealer Support,* 73 B.R. at 765 (citations omitted).

In the case at bar, while it appears that Meinerz does not have standing because it is not a secured creditor, the Court concludes it is unnecessary to decide the standing issue because even if Meinerz does have standing to request marshaling, there is no merit in its request because the two funds are not in the hands of a common debtor.

■ Marshaling has traditionally required that both sources of payment belong to a common debtor. *In re Tampa Chain Co., Inc.,* 53 B.R. 772, 778 (Bankr.S.D.N.Y. 1985). This requirement is not met when the funds to be marshaled "are held 'separately by a corporation and its shareholder even though [the shareholder] guaranteed the corporate debt.'" *Dealer Support,* 73 B.R. at 765 (quoting *Tampa Chain,* 53 B.R. at 778).

■ Although two funds exist in the case at bar, only one belongs to Debtor while the other fund belongs to the Wickerts. Meinerz is asking the Court to require Norwest, Debtor's sole secured creditor, to proceed first against the assets of Debtor's guarantor, the Wickerts, before proceeding against assets of Debtor's bankruptcy estate. Since Debtor has no right, title or claim of interest in the real estate owned by the Wickerts individually, the "common debtor" requirement is not satisfied.

The Court recognizes that certain exceptions to the "common debtor" requirement exist such as piercing the corporate veil and contribution to capital. *See Francis Const.,* 54 B.R. at 15; *Tampa Chain,* 53 B.R. at 778. However, the Court does not need to decide whether to adopt these exceptions because Meinerz has presented no evidence suggesting that any of the exceptions should apply. In addition, the Court rejects Meinerz's reliance on *Jack Green's,*

*supra,* for the proposition that the Court could ignore the "common fund" requirement, for two reasons. First, *Jack Green's* is distinguishable on its facts because that case involved a corporate debtor and the individual bankruptcies of two controlling shareholders so the Court had jurisdiction over all the property involved in the marshaling request. In the case at bar, the property in question is owned exclusively by the guarantors, the Wickerts, who have not filed for bankruptcy. Further, Debtor has no interest in the property. Thus, this Court does not have jurisdiction over the property.

Second, the only rationale for affirmance in *Jack Green's* is the Court's equitable concern that unless the bank was compelled to first exhaust its remedies against the guarantor, there would be nothing for unsecured creditors.

[I]t would be in the highest degree inequitable to allow the Bank to exhaust the business assets of the corporate bankrupt without first looking to the real estate mortgaged to it. To permit such a course would leave the general creditors of the business with nothing.

*Dealer Support,* 73 B.R. at 766 (quoting *Jack Green's,* 597 F.2d at 133). Again, the case at bar is easily distinguishable because in Debtor's schedule B, statement of all property of Debtor, Debtor has shown accounts receivable in the amount of $24,-312.95. Further, a post-petition inventory conducted by Debtor reflects $69,267.29 in inventory available to the bankruptcy estate. As a result, Norwest appears to be overly secured, and there appear to be significant assets and proceeds available for a distribution to Debtor's general unsecured creditors. Therefore, the only rationale for the Eighth Circuit Court of Appeals' affirmance of the *Jack Green's* case is not present in the case at bar.

In conclusion, since Meinerz's request for marshaling is improperly before the Court, and since the elements necessary for marshaling are not present in any event, the Court must deny Meinerz's request for an order requiring marshaling.

*Abandonment of Property*

Section 554(b) provides that:

> [o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any *property of the estate* that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

11 U.S.C. § 554(b) (emphasis added). In its motion, Meinerz argued it was entitled to an abandonment order requiring trustee to abandon $3,250.00 which allegedly revested in Meinerz, pursuant to section 349(b), upon dismissal of Debtor's first chapter 11 petition.

Concerning the dismissal of Debtor's first chapter 11 petition, section 349 provides in part:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
>
> (1) reinstates—
>
> . . . . .
>
> (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and . . .
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b). In interpreting this section, Collier on Bankruptcy states that "[t]he objective of section 349(b) is to restore all property rights, as far as practicable, to the positions they occupied at the commencement of a case that was dismissed under one of the operative sections of title 11." 2 Collier § 349.03 at 349–9 (15th Ed.1986).

■ Section 541(a)(1) provides the property of the estate includes all legal and equitable interests of the debtor in property as of the commencement of the case. In the case at bar, when Debtor's first chapter 11 petition was dismissed, the avoided transfer to Meinerz of $3,250.00 was reinstated pursuant to section 349(b)(1)(B), and the $3,250.00 revested in Meinerz pursuant to section 349(b)(3). As a result, Debtor no longer had any legal or equitable interest in the property, pursuant to section 541(a). However, Debtor did not return the money to Meinerz but instead kept it. Thus, $3,250.00 of Debtor's current estate should not be property of the estate because said amount revested in Meinerz after the dismissal of Debtor's first chapter 11 petition on March 25, 1986.

■ Since $3,250.00 of Debtor's estate should not be included as property of the estate, Meinerz could not recover said amount under section 554(b) because under said section, the trustee can only abandon property of the estate. However, since Meinerz is entitled to the $3,250.00 due to its revesting under section 349(b)(3), equity and fairness dictate that after Debtor's estate has been liquidated, the trustee must distribute the first $3,250.00 to Meinerz.

## CONCLUSION AND ORDER

WHEREFORE, based on the foregoing analysis, the Court concludes that since Meinerz's request for marshaling is improperly before the Court, and since the elements necessary for marshaling are not present in any event, Meinerz is not entitled to an order requiring marshaling.

FURTHER, the Court concludes that since the $3,250.00 revested in Meinerz following the dismissal of Debtor's first chapter 11 case, said amount is not property of Debtor's estate so Meinerz is not entitled to an abandonment order.

IT IS ACCORDINGLY ORDERED that Meinerz's motion for order requiring marshaling is denied.

IT IS FURTHER ORDERED that Meinerz's motion for order requiring trustee to abandon property is denied.

IT IS FURTHER ORDERED that after Debtor's estate has been liquidated, the trustee must distribute the first $3,250.00 to Meinerz.