In the Matter of AMERICAN ZYLOPTIC CO., Inc., Bankrupt.

No. 55413.

United States District Court
E. D. New York.

Feb. 3, 1960.

Jacob Frummer, Brooklyn, N. Y., for trustee.

Cornelius W. Wickersham, Jr., U. S. Atty., for E. D. New York, Brooklyn, N. Y., by Lawrence S. Levine, Asst. U. S. Atty., Brooklyn, N. Y., for the United States.

Benjamin, Galton & Robbins, New York City, for Otarion Listener Corp., Edward Greenbaum, New York City, of counsel.

I. Philip Sipser, New York City, for wage claimants. Richard A. Weinmann, New York City, of counsel.

BYERS, District Judge.

This petition to review the decision of Referee Castellano of December 31, 1959 is addressed solely to the order of priority to govern the distribution by the trustee in bankruptcy of $13,057.53 now in his hands.

The involuntary petition in bankruptcy was filed February 2, 1959, about seven months after the dates referred to below.

The question arises under Section 67, sub. c of the Bankruptcy Act (11 U.S. C.A. § 107, sub. c), the presently material provision of which is:

"Where not enforced by sale before the filing of a petition initiating a proceeding under this Act and except where the estate of the bankrupt is solvent: (1) though valid against the trustee under subdivision b of this section, statutory liens, including liens for taxes or debts owing to the United States or to any State or any subdivision thereof, on personal property not accompanied by possession of such property, and liens, whether statutory or not, of distress for rent shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 of this Act."

Also Section 64, 11 U.S.C.A. § 104, sub. a(1, 2) which ordains priority as follows:

"Debts Which Have Priority. a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; * * *

(2) wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding * *."

The said decision provides on this subject:

"1. Administration expenses including fees due referees' salary and expense funds, amounts to be fixed, to be paid in full.

"2. Thirty six claims for wages to be paid in full, wage claims total $2389.60.

"3. Tax lien of the District Director of Internal Revenue, District of Lower Manhattan $6007.30 to be paid in full.

"4. The balance then remaining to be paid to Otarion Listener Corp. on account of its chattel mortgage lien of $5000.00 and interest."

The petitioner is Otarion Listener Corporation (Otarion) the holder of a chattel mortgage in the sum of $5,000 given to secure promissory notes amounting to that sum.

The filing date was June 20, 1958 and the validity of the mortgage is not in question.

Eight days earlier (June 12, 1958) the Director of Internal Revenue duly filed a notice of tax lien in the sum of $6,007.-30 against the bankrupt, the priority of which, as a matter of law, over the chattel mortgage is conceded by Otarion.

$2,050.23, representing the difference between the total of the first two items and the trustee's balance, is insufficient to pay the administration expenses and the wage claims; thus the question for decision becomes whether those items must be paid before any sum can be allocated to the chattel mortgage.

The petitioner's argument is that the decision of the Referee subordinates the chattel mortgage to the administration and wage claims, solely as the result of the presence of the tax lien; if there were none, the lien of the chattel mortgage would come first in the order of distribution, and that the result of the

interposition of the tax lien is a fortuitous circumstance which is not seen to create the inevitable consequence of subtracting from the chattel mortgage lien all that the Referee's decision involves.

To stress the contention, it is urged that conceivably the tax lien could be in a nominal sum, such as $10, and in such circumstances the administration and wage claims should not be promoted out of the order which they would have occupied had no tax lien whatever been filed.

That the question of circuity of lien is not free from difficulty appears from the discussion in the opinion of the case upon which the Referee relies: In re Quaker City Uniform Co., Inc., 3 Cir., 238 F.2d 155, at pages 158 and 159 and footnote 6. See also Collier, 14th ed., Vol. 4, pp. 296 and 297.

It is not urged for Otarion that its chattel mortgage constituted a statutory lien and it is therefore not here so regarded.

Since neither the Collector nor Otarion enforced a lien before the filing of the petition in bankruptcy, and since there was no lien "of distress for rent," the only lien here involved falling within the precise wording of Section 67, sub. c is that for United States taxes, and it is that lien which in terms is subordinated to administration expenses and wage claims.

Therefore in effect to insert into the text of the Act, "or a valid lien created by chattel mortgage upon the property of the bankrupt" or similar text, would be to accomplish an amendment to the law. Whether that can be wrought with propriety under the guise of construing the statute as applied to a given state of facts, is to suggest an inquiry touching the true function of the courts, which has engendered much controversy.

The court in Quaker City meets the dilemma thus (238 F.2d at page 159):

"In view of the fact that Congressional intent was to favor expenses of administration and wage claims" (see p. 158, top of second column)

"while leaving state priorities unaffected, we hold that the lien of the chattel mortgage, inferior under state law," (i. e., to landlord's lien under Pennsylvania law [43 P.S. § 221] ) "is by necessary implication postponed by Section 67, sub. c, to a position behind the subordinated landlord's lien. Thus, the order of payment becomes: (1) costs of administration; (2) wage claimants; (3) landlord; and (4) chattel mortgagees. * * *"

This quotation indicates that the decision does not in terms adjudicate that the presence of a Federal tax lien necessarily subordinates a chattel mortgage to administration expenses and wage claims. It is true, however, that the liens created by Pennsylvania law present in that case, may be regarded as analogous to the one here involved, for the purpose of establishing priority in distribution.

It has been said that Congress had in mind the general purpose of providing that those two claims should have priority over any others, in the distribution of a bankrupt's assets; whether that is entirely true, however, cannot be stated with assurance. See the discussion in Goggin v. Division of Labor Law Enforcement of California, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543 and footnotes.

The present difficulty is that the Congressional purpose was not so clearly stated as to leave no room for doubt. It is a plausible suggestion that having mentioned certain liens as being subordinate to administration and wage claims, all others are excluded by necessary implication. That is, the principle of *expressio unius, etc.*, may be of assistance in the present task. This would attribute a deliberate, albeit indirect, purpose to the legislative process. Reference to what has been written in the authorities herein referred to, concerning the legislative preoccupation with the impact of accumulated tax liabilities—including penalties—upon administrative costs and the claims of wage earners, lends weight to the argument that it was tax liens that were mainly thought to interfere with an equitable distribution of funds in bankruptcy, rather than all liens which had a valid inception and a legal status. In other words, that Congress deliberately selected the liens that were to be subordinate to these particular claims, and refused to deal similarly with liens not specifically enumerated.

The problem was alluded to in California State Department of Employment v. United States, 9 Cir., 210 F.2d 242, at page 244, under circumstances that involved only a question of priority between the State of California and the United States. The former asserted a claim under the Unemployment Insurance Act, West's Ann.Cal.Unemployment Insurance Code, § 100 et seq., fortified by possession which was later in time to the filing of the lien of the United States for Federal taxes. Thus decision was required as to priority between liens, as to which the court says, quoting Collier:

"' * * * § 67 (sub.) c does not, nor does any other provision of the Bankruptcy Act for that matter, set up any scheme of priorities among liens.' "

The court decided that the priority of the United States lien was not defeated by the possession taken by the State authority. Thus:

"To insure payment of administrative expenses and wage claims Congress decided to subordinate statutory liens to a limited extent, that is, to unsecured claims having a first and second priority under § 64, sub. a." (Citing Collier.) "We find no suggestion that Congress intended by § 67 sub. c to permit a subordinate lienholder" (State of California) "who secures possession of personal property prior to bankruptcy to thus place himself in a superior position to an otherwise prior and superior lienholder."

That precise issue is not in this case, for Otarion did not seek to take possession under its chattel mortgage at any time. Thus the question of priority resolved in that case is absent here; the

direction that the amount due to the Government be set aside from the proceeds in the hands of that trustee, and deductions be made therefrom for administration and wage claims and the remainder, if any, be applied to the State tax lien (Otarion's mortgage, here) is perhaps helpful.

City of New Orleans v. Harrell, 5 Cir., 134 F.2d 399, is of no assistance here, since it decided that a chattel mortgage valid under Louisiana law would not be subordinated to the claim of the City which rested upon an inchoate lien for taxes which was incomplete before bankruptcy. That trustee proposed to distribute by paying from funds realized from the sale of bankrupt's property, two chattel mortgage creditors, and the net balance on account of administration costs; this would leave nothing for wage claims, or the City's tax claim. This distribution was approved by the district and appellate courts.

There seems to be no decision by the Second Circuit Court of Appeals which would resolve the dispute presented by this record, and the acceptance by the Referee of the decision in Quaker City as dispositive of the controversy is not the subject of present criticism, although it is not followed.

■ I do not think that the purpose of Congress is so clearly to be discerned as to all liens that must be dealt with under Sec. 67, sub. c in view of all that has been written, that this court would be justified in reading into the statute, as by necessary implication, that which is not clearly stated.

The process of subjecting liens, validly created, to the priorities which have been discussed, is so important to the commercial interests involved in all credit operations, that the course of circumspect adjudication is thought to require adherence to what has been written rather than what might have been, had a more comprehensive purpose of legislation been envisaged.

■ This means that the petition to review is granted, and that the order of distribution should be amended so as to provide:

1. The sum of $6,007.30, the equivalent of the amount due under the Federal tax lien, should be applied to:

(a) administration expenses, to be fixed;

(b) wage claims;

(c) the Federal tax lien,

in that order.

2. The sum of $5,000, plus interest as allowed, to Otarion Listener Corporation, as chattel mortgagee.

3. The balance remaining to be applied, in the order of priority stated in "1" namely, to absorb any possible unpaid balance of administration expenses and wage claims, and whatever is left is to be applied to the Federal tax lien.

The foregoing is based upon the suggestion found at page 298 of Vol. 4 of Collier, 14th ed.

Settle order.