**In re Calvin U. PRICE, D.O., Debtor.**

**Bankruptcy No. 84–07692.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

June 18, 1985.

Jeffrey A. Chimovitz, Flint, Mich., for debtor.

Geoffrey L. Neithercut, Flint, Mich., for Genesee Merchants Bank & Trust.

MEMORANDUM OPINION REGARDING MOTION OF GENESEE MERCHANTS BANK & TRUST FOR RELIEF FROM THE AUTOMATIC STAY

ARTHUR J. SPECTOR, Bankruptcy Judge.

The debtor is a physician engaged in the practice of osteopathic medicine. On April 30, 1980, he borrowed $51,345.58 from Genesee Merchants Bank & Trust, movant herein, executing a promissory note in that amount. To secure the indebtedness, the debtor granted the bank a second mortgage on his personal residence and a first mortgage on the commercial office building in which he conducted his practice. At the time the debtor filed his petition for relief under Chapter 11, there was a balance due of $23,150.47 in principal and $3,060.64 in interest on the note.

On September 30, 1980, the debtor entered into a second loan agreement with the bank, this time borrowing $85,000.00. As security for this note, the debtor gave the bank a second mortgage on the same office building. When the debtor subsequently defaulted on this note, the bank foreclosed the second mortgage on the property by advertisement. At a sheriff's sale held on January 9, 1984, the bank bid in the property for $86,466.99, this sum representing the full balance of the debtor's indebtedness on this note. On March 13, 1984, before the redemption period expired, the debtor filed his petition for relief in this Court.[1]

Now before the Court is the bank's motion for relief from the stay so that it may

1. That redemption period has, of course, since expired. *In re Glenn,* 760 F.2d 1428 (6th Cir. 1985); *In re Young,* 48 B.R. 678, 12 B.C.D. 1263, Bankr. Law Reptr. ¶ 70,534 (Bankr.E.D.Mich. 1985). Had the debtor not filed bankruptcy, the redemption period would have expired on July 9, 1984, six months after the sale, pursuant to M.C.L.A. § 600.3240(3). Bankruptcy Code § 108(a) provides that a redemption period shall expire on the later of 60 days after the petition for relief or the time when the redemption period would ordinarily expire. As the debtor filed his petition on March 13, 1984, July 9th would be the latest date on which he could redeem. The debtor having failed to redeem by that date, the title to the office building vested in the purchaser at the foreclosure sale.

foreclose the second mortgage on the debtor's home. We note with some displeasure that the bank's motion fails to state whether the claim for relief is brought under § 362(d)(1) or § 362(d)(2) of the Bankruptcy Code. Since the motion does not claim that the debtor has no equity in his residence, we may summarily deny any claim under § 362(d)(2), as one of the essential elements of that cause of action was not well pled. If we construe the bank's motion liberally so as to make out some colorable basis for lifting the stay, it appears that the bank does aver that it is not adequately protected, since it has not been receiving payments on the note since September, 1983 (a period of approximately eight months at the time the motion was filed). Even so, the motion nowhere makes an express declaration that the stay should be lifted for lack of adequate protection. Had the debtor moved for denial of the motion in its answer or at oral argument for failure to state a cause of action, we might well have granted that request, and this matter could have been resolved more expeditiously. As the nondescript nature of the bank's motion did not deter the parties or the Court from plunging into the somewhat unique issues in this case, and as they are relevant to the case at hand, we will address them here.

■ Although the ultimate issue of whether there is cause for lifting the stay is a matter of federal bankruptcy law, the outcome is determined by analyzing the rights of the parties under state law. Unless the Bankruptcy Code mandates a different analysis, property rights of the parties are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Madeline Marie Nursing Homes*, 694 F.2d 433 (6th Cir.1982); *In re Owens*, 27 B.R. 946 (Bankr.E.D.Mich.1983). As will be seen shortly, determining just what rights the various parties here have in their various capacities under Michigan law may be

a task more suited to historians than to lawyers; however, the principles set down in the distant past of this state's jurisprudence contain the answer to the case at bar.

■ As a preface to our analysis, we note two premises which do not appear to be in dispute here. First, the parties agree that when the bank foreclosed its second mortgage on the debtor's office, it did not intend a merger of its mortgage interests and, since it did not so intend, the mortgages did not in fact merge. This is in accord with state law on this subject. *Sylvania Savings Bank v. Turner*, 27 Mich.App. 640, 183 N.W.2d 894 (1970). Second, we hold that the two mortgages given as security for the loan of April 30, 1980 may be treated as one mortgage, even though the parties executed a separate instrument to secure each parcel. We so hold because the mortgages were obviously part of a single transaction. They were executed on the same date, recorded sequentially, secure the same indebtedness represented by the note of April 30, 1980, and we deem them to be for all practical purposes one mortgage granting two distinct parcels as security. To do otherwise would elevate form over substance, and we decline to do so here.

■ The crux of the debtor's argument is that the Court should compel the bank to foreclose its remaining first mortgage interest in the office building before being allowed to put the debtor out of his residence. Since it is agreed that the office building has a value of at least $100,000 [2] it is obvious that foreclosure of the remaining mortgage on that property would yield enough to fully satisfy the balance on the note of $26,211.11, thereby extinguishing, or at least substantially diminishing, the lien of the second mortgage on the debtor's residence. The bank, understandably, resists this construction, as it would be

---

**2.** At the preliminary hearing, the bank asserted that the property was worth approximately $100,000. Counsel for the debtor stated on the basis of an appraisal that he believed the property to have a maximum value of $125,000. Even if the lower figure is used, it is obvious that the market price of the property is substantially more than the bid price of $86,466.99.

against its own interest as the purchaser of the office building at the previous foreclosure sale, since it bought the property subject to its own first mortgage thereon; it would much rather attempt to satisfy the debt with property other than that to which it already holds title. If the debtor prevails, the bank, as a practical matter, winds up getting nothing more than it already has. Therefore, the bank argues that it has the right to sell the debtor's residence to satisfy his obligation. We agree with the bank, although not necessarily for the reasons it argued.

Foreclosure of mortgages by advertisement in Michigan is governed by M.C.L.A. § 600.3201–3280.[3] M.C.L.A. § 600.3224 establishes the procedure to be followed when the mortgage covers more than one distinct parcel:

> If the mortgaged premises consist of distinct farms, tracts, or lots not occupied as 1 parcel, they shall be sold separately, and no more farms, tracts, or lots shall be sold than shall be necessary to satisfy the amount due on such mortgage at the date of the notice of sale, with interest and the cost and expenses allowed by law but if distinct lots be occupied as 1 parcel, they may in such case be sold together.

This statute was enacted for the benefit of mortgagors and other parties having an interest in the encumbered premises; it requires that the debt be satisfied with the fewest parcels possible. *Masella v. Bisson*, 359 Mich. 512, 102 N.W.2d 468 (1960). The statute is mandatory in nature; that is, any mortgagee seeking to foreclose by advertisement must sell the property by parcels if they are in fact so divided. *Id.; Keyes v. Sherwood*, 71 Mich. 516, 39 N.W. 740 (1888).

While the statute requires multiple parcels to be sold separately, it does not direct how that is to be accomplished. Presumably, the mortgagee could bring both parcels on for sale at the same time, and bids could be made on each; this is apparently the procedure contemplated by the plaintiff in *Masella v. Bisson*. On the other hand, there is nothing in the statute which precludes the mortgagee from selling the separate parcels at different times. This is precisely what the bank intends to do; it proposes to foreclose on the debtor's home first to obtain any equity that exists over and above the first mortgagee's interest. The debtor takes an opposite view; he claims that it is he who can dictate which property is put up for sale first. In support of this contention, he invokes the equitable doctrine of marshaling assets.

As a Chapter 11 debtor in possession, the debtor holds the rights and powers of a trustee,[4] including the status of a judicial lien creditor. The debtor argues that as one with an inferior lien upon the condominium he may compel the holder of the senior lien to marshal assets. The assertion that 11 U.S.C. § 544 gives a trustee or debtor in possession the authority to require secured creditors to marshal their assets for the benefit of the estate is an intriguing proposition, and a review of the leading cases indicates that it is by no means a settled issue.[5] Were the question

---

**3.** The bank has indicated that if it is allowed to foreclose on the debtor's home, it would do so by advertisement. It could also, of course, institute proceedings to foreclose by action. That procedure is governed by M.C.L.A. § 600.3101–3180. For the purposes of this case, the procedure regarding sale of separate parcels subject to a mortgage is the same regardless of which remedy the mortgagee uses.

**4.** 11 U.S.C. § 1107(a) grants a debtor in possession all the rights, title and powers of a trustee under Title 11. Among those powers are the avoiding powers created by giving the trustee the status of a judicial lien creditor in 11 U.S.C. § 544.

**5.** In *In re Jack Green's Fashions for Men-Big and Tall, Inc.*, 597 F.2d 130 (8th Cir.1979), the Court of Appeals permitted the trustee to compel a secured creditor of the corporate debtor to pursue the assets of the corporation's officers, who had guaranteed the debtor's loans. Other courts have also allowed the trustee to invoke the doctrine of marshaling, *In re Multiple Services Industries*, 18 B.R. 635 (Bankr.E.D.Wis.1982); *In re Clary House, Inc.*, 11 B.R. 462 (Bankr.W.D. Mo.1981); *Farmers & Merchants Bank v. Gibson*, 7 B.R. 437 (Bankr.N.D.Fla.1980). However, the result has also drawn a considerable amount of criticism, *In re McElwaney*, 40 B.R. 66, 10 C.B.C.2d 820 (Bankr.M.D.Ga.1984); *In re*

determinative of the case at bar, we might well agree with the debtor. However, that thorny problem can be saved for determination at a later time because, even if the debtor in possession or trustee has the power to compel a marshaling of assets generally, Michigan law gives him no right to do so on the facts of this case.

■ In attempting to uncover the principles guiding the use of the doctrine of marshaling assets in Michigan, one finds that the leading—in fact the only—cases discussing the doctrine were decided before the turn of the century; nonetheless, the principles enunciated by our bygone brethren retain their vitality as a guiding beacon for current cases. The equitable remedy of marshaling exists for the benefit of persons who hold a subordinate secured claim in property; it holds that where a senior creditor has a lien on two funds or parcels, and the junior lienor has a lien on only one of those properties, a court of equity may compel the former to satisfy his debt out of the property which is encumbered by only his lien. *Webber v. Webber*, 109 Mich. 147, 66 N.W. 960 (1886); 16 M.L.P. *Marshaling Assets* (West 1957). Application of the doctrine is limited in that it will not be allowed if it cannot be invoked without prejudicing or injuring the rights of the senior creditor. *Farwell v. Bigelow*, 112 Mich. 285, 70 N.W. 579 (1897). A further limitation, more recently stated, is that marshaling should not be permitted when it would do harm to the interests of a third party. *In re Spectra Prism Industries, Inc.*, 28 B.R. 397, 399 (9th Cir.B.A.P.1983).

Making our way carefully through the earlier opinions of the Michigan Supreme Court, we find that the case of *Sager v. Tupper*, 35 Mich. 134 (1876), provides the answer to the case at bar. In that case Nelson and Lorena Tupper gave a mortgage to one Eldred covering four 40-acre parcels owned by the Tuppers. The Tuppers sold one of these lots to their son and daughter-in-law, then later granted a second mortgage on the remaining 120 acres to the plaintiff, Sager. Eldred later assigned his mortgage to Clark, who subsequently commenced a statutory foreclosure proceeding and bid off the entire 160 acres at the sale, including the property previously deeded away by the mortgagors. The plaintiff, as second mortgagee, filed suit, raising as one argument that the senior mortgagee should have been required in equity to marshal assets, or, in other words, to sell the 40-acre parcel owned by the Tuppers' son before resorting to the lands subject to the plaintiff's junior lien.

The court rejected this argument. Although the plaintiff had stated the basic prerequisites for utilization of marshaling, the court held that the doctrine could not be invoked by the plaintiff because the mortgagor had disposed of the 40-acre parcel before the plaintiff had obtained any mortgage interest in the remaining 120 acres. In fact, the court went on to hold that the facts of the case required that the property subject to the plaintiff's second mortgage be sold *before* the paramount creditor could sell the 40-acre tract. Although it did not name the equitable principle by which it reached this result, the

*Computer Room, Inc.*, 24 B.R. 732 (Bankr.N.D. Ala.1982); *In re Plad*, 24 B.R. 676 (Bankr.M.D. Tenn.1982); *In re United Medical Research, Inc.*, 12 B.R. 941 (Bankr.C.D.Cal.1981), although several of these cases disagree with the Eighth Circuit not so much because the trustee sought to marshal assets as because the court allowed marshaling of funds which were not owned by the debtor. For a general review of the cases on this subject, *see* Karasik & Kolodney, *The Doctrine of Marhaling Under the Bankruptcy Code*, 89 Commercial L.J. 102 (Feb. 1984). Although the Bankruptcy Act's predecessor to § 544, Bankruptcy Act § 70c, 11 U.S.C. § 110(c) (repealed), intended to give the trustee a tool with

which to defeat secret unperfected liens, 4 *Collier on Bankruptcy*, ¶ 544.01, 544–2 (15th ed. 1985), there is nothing in the Bankruptcy Code prohibiting a trustee from using his or her "strong arm" powers for other purposes. Indeed, the extent of the trustee's powers under § 544 are defined by the rights and powers given a judicial lien creditor by state law. *Id.*, ¶ 544.02, 544–8. In other words, if a judicial lien creditor, as a holder of a lien subordinate to that of perfected secured creditor, could compel the paramount creditor to marshal assets under Michigan law, then a trustee in bankruptcy could arguably do the same.

court was relying on the rule that mortgaged properties be foreclosed upon in their inverse order of alienation. That doctrine has been described as follows:

> Where a part of the mortgaged premises has been aliened by the mortgagor subsequently to the mortgage, the rule in equity, on a foreclosure and sale, is to require that part of the premises in which the mortgagor has not parted with his equity of redemption to be the first sold, and then, if necessary, that which has been aliened, and, where the latter is in possession of different vendees, in the inverse order of alienation.

*J.I. Case Threshing Machine Co. v. Mitchell*, 74 Mich. 679, 683, 42 N.W. 151 (1889). *See also McVeigh v. Sherwood*, 47 Mich. 545, 11 N.W. 379 (1882); *Gilbert v. Haire*, 43 Mich. 283 (1880); *Cooper v. Bigly*, 13 Mich. 463 (1865); *Sibley v. Baker*, 23 Mich. 312, 314 (1871); 53 Am.Jur.2d *Marshaling of Assets* § 2 (1970).

Under the venerable principles described above, the trustee would be unable to compel the bank to marshal its assets. The property from which the trustee would have the bank satisfy the debt (the office building) is not part of the debtor's estate. The sheriff's sale occurred on January 9, 1984, some two months before the debtor filed his petition for relief on March 13. At that time, when the debtor received the status of a judicial lien creditor, his estate had no interest in the office building, save for the equity of redemption. That interest is not sufficient to empower a junior creditor to compel the paramount creditor to marshal assets; accordingly, the principles enunciated in *Sager v. Tupper* apply. We reach the same result by adhering to the rule that property is to be foreclosed in the inverse order of alienation. The office building was alienated by sale on January 9, 1984, while the debtor's residence remains in his possession; applying the rule, the latter must be sold in satisfaction of the mortgage before the former.

Although these rules appear to impose a hardship upon the debtor here, their basic fairness is clear when one remembers that they developed in courts of equity to protect the rights of innocent third parties purchasing from the mortgagor. *J.I. Case Threshing Machine Co. v. Mitchell, supra.* They ensure that the first property sold is that in which the mortgagor retains title; thereafter the property alienated most recently is attached, until the last property under the mortgage to be sold at foreclosure is the first property sold by the mortgagor. In the context of the present proceedings, the bank, as purchaser at the foreclosure sale of the office building, must be treated as an entirely separate entity from its position as mortgagee. *See In re Young*, 48 B.R. 678, 680, 12 B.C.D. 1263, Bankr.Law Reptr. ¶ 70,534 (Bankr.E.D. Mich.1985). If in fact a disinterested person had purchased the property at the sheriff's sale, the inequity to that purchaser would be manifest and, as marshaling will not be invoked to the detriment of third parties, *In re Spectra Prism Industries, Inc., supra*, a state court would be unlikely to order a marshaling of assets.

■ Finally, after submerging ourselves in the subtle nuances of equitable foreclosure remedies, we return to the facts of this particular case to determine whether the bank is actually entitled to have the stay lifted. As we noted previously, the bank's only claim for relief is a lack of adequate protection. By arguing that the bank cannot foreclose on his residence, the debtor was essentially claiming that the bank's interest was adequately protected by the additional equity in the office building. Our holding that the bank is entitled to seek satisfaction of the debt by foreclosing on the debtor's residence defeats that attempt to show adequate protection; it is not, however, the only means by which adequate protection may be provided. *See* 11 U.S.C. § 361. Genesee Bank asserts in its motion that repayments on the note of April 30, 1980 were to be $1,000 per month; the motion further asserts that no payments were received after September, 1983. The debtor's answer admits that he made no payments, for the reason that "the bank has refused to accept pay-

ments." It was further stated at the hearing on this motion that these payments, if received, were to be treated either as rent for continued occupancy of the office building or as payment on the mortgage. Unfortunately, the debtor has not indicated whether payments were tendered at any time, and the bank did not indicate whether the alleged default was continuing. Therefore, as much as we would like to resolve the matter once and for all with this opinion, we cannot do so; a further hearing will be held for the limited purpose of determining whether the debtor is making mortgage payments to the bank or is providing some other form of adequate protection.

A hearing will be scheduled by the clerk.