## In re ATLAS COMMERCIAL FLOORS, INC., Debtor.

Bankruptcy No. 88–11632.

United States Bankruptcy Court,
E.D. Michigan, S.D.,
at Flint.

March 29, 1991.

---

Michael A. Mason, Flint, Mich., for trustee.

Earle I. Erman, Southfield, Mich., for Michigan Carpenters' Fringe Ben. Funds.

## MEMORANDUM OPINION ON OBJECTION TO TRUSTEE'S FINAL REPORT

ARTHUR J. SPECTOR, Bankruptcy Judge.

The facts in this case are not in dispute. There remains in the Debtor's estate $9,274.63 available for final distribution. These funds are subject to an unavoidable tax lien held by the Michigan Employment Security Commission (MESC) in the amount of $2,564.00. In addition, there are administrative claims against the estate which total approximately $5,126.50,[1] and a § 507(a)(4)[2] claim of $2,250.00 held by the Michigan Carpenters' Fringe Benefit Funds (Benefit Funds).[3]

Because the remaining funds are subject to the MESC's tax lien, their distribution is governed by § 724(b). For purposes of this case, that section provides in pertinent part that

> [p]roperty ... that is subject to [an unavoidable] lien ... that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—
>
> .  .  .  .  .
>
> (2) [first], to any holder of a claim of a kind specified in section 507(a)(1) [through] 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
>
> (3) [second], to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
>
> .  .  .  .  .
>
> (5) [third], to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and
>
> (6) [fourth], to the estate.

11 U.S.C. § 724(b).[4]

The parties agree that § 724(b) is relevant for purposes of determining how the funds in this case should be distributed. They disagree, however, as to how such distribution should actually be made. The trustee proposes payment as follows:

(1) Pursuant to § 724(b)(2), an amount equal to the MESC's tax lien, $2,564.00, is applied toward payment of § 507(a)(1) claims, leaving a balance of $6,710.63.

---

1. This figure does not reflect costs chargeable by the bankruptcy court clerk, which have not yet been determined.

2. All statutory references are to title 11 of the United States Code.

3. We are omitting discussion of general unsecured claims because, as is apparent from the figures cited above, there are insufficient funds to pay such claims.

4. Paragraphs (1) and (4) of § 724(b) refer to liens which are senior and junior, respectively, to the tax lien in question. There are no such liens in this case.

(2) Pursuant to § 724(b)(5),[5] the MESC's $2,564.00 tax lien is paid in full, leaving a balance of $4,146.63.

(3) Pursuant to § 724(b)(6) and § 726, the balance of the § 507(a)(1) claims —$2,562.50—is paid, leaving $1,584.13 for payment to the Benefit Funds of a portion of their § 507(a)(4) claim.[6]

The Benefit Funds take issue with the trustee's proposed distribution, arguing that administrative and priority claims (including their § 507(a)(4) claims) should be fully paid, with the resulting balance of $1,898.13 paid to the MESC. Under either the trustee's or the Benefit Funds' scenario, § 507(a)(1) claims would be paid in full. But the Benefit Funds' distribution scheme would increase their recovery, and decrease the MESC's payment, by $665.87. For the reasons which follow, we hold that the trustee's interpretation of § 724(b) is correct.

■ We note at the outset that § 724(b)(2) expressly limits the amount distributable to § 507(a) claimants to the "amount of such allowed tax claim that is secured by such tax lien." In light of this qualification, it is clear that administrative and priority claimants are able to prime a tax lienholder under § 724(b)(2) only to the extent of the tax lien; if, as in this case, the sum of administrative and priority claims exceeds the amount of the tax lien, the excess amount is relegated to § 724(b)(6) status and paid in accordance with § 726. To hold otherwise would render meaningless the limiting language in § 724(b)(2).

Because the trustee's proposed distribution subordinates § 507(a) claims to the MESC's tax lien to the extent the former exceed the latter, it complies with the priorities established by § 724(b). On the other hand, distribution of the estate's funds in the manner urged by the Benefit Funds is directly contrary to § 724(b). The Benefit Funds are unable to direct our attention to any case which supports their position. They nevertheless champion their distribution scheme utilizing two different theories.

■ At the hearing, the Benefit Funds argued that the MESC should be surcharged under § 506(c) for all or some portion of the unpaid administrative expenses. Even were we to assume that the Benefit Funds have standing to make such a claim, *compare, e.g., In re Interstate Motor Freight System IMFS,* 71 B.R. 741, 745, 15 B.C.D. 935 (Bankr.W.D.Mich.1987) (employee benefit funds lacked standing to bring § 506(c) action) *with, e.g., In re Staunton Industries, Inc.,* 74 B.R. 501, 506, 16 B.C.D. 757, 16 C.B.C.2d 1348 (Bankr.E.D. Mich.1987) (landlord had such standing),[7] they have failed to allege, let alone prove, that the MESC directly and quantifiably benefitted from, or consented to, the expenses incurred by the estate. *Cf. In re By–Rite Oil Co.,* 87 B.R. 905, 921 (Bankr. E.D.Mich.1988). The Benefit Funds' first argument is therefore unavailing.

■ The Benefit Funds also relied on the equitable doctrine of marshaling. We previously described this doctrine as existing "for the benefit of persons who hold a subordinate secured claim in property; it holds that where a senior creditor has a lien on two funds or parcels, and the junior lienor has a lien on only one of those properties, a court of equity may compel the former to satisfy his debt out of the property which is encumbered by only his lien." *In re Price,* 50 B.R. 226, 230 (Bankr.E.D. Mich.1985).

In order for the doctrine to apply here, then, there must exist two distinct funds from which administrative expenses could be paid. The Benefit Funds apparently believe that that is the case, arguing that holders of administrative expense claims

---

**5.** Section 724(b)(3) is inapplicable because the amount of the MESC's tax lien is less than the sum of administrative and priority claims.

**6.** Due to a math error, some of the payment figures set forth in the trustee's brief are slightly different from those calculated by the Court.

**7.** In contrast to the present case, we note that the services for which compensation was sought in *Staunton* were provided by the creditor requesting the § 506(c) surcharge.

should be compelled under the marshaling principle to satisfy their claims from the estate's "general funds," rather than from the "secured portion of the MESC's claim."

The Benefit Funds do not explain what they mean by the term "general funds." Presumably, they have in mind that portion of estate funds which exceeds the amount of the MESC's claim. But the fact that the funds exceed the amount of the MESC's claim is of no significance: § 724(b) obviously contemplates such a contingency, since § 724(b)(6) provides that any property which remains after payment in full to the tax lienholder under § 724(b)(5) is to be paid to the estate. Because the entire $9,274.63 is "subject to" the MESC's lien, that entire amount, rather than a subset thereof, constitutes a single fund to be distributed in accordance with § 724(b). See In re Darnell, 834 F.2d 1263, 1267–69 nn. 9 & 12 (6th Cir.1987).[8] We therefore see no legitimate basis for distinguishing between "general," "secured," or "carved out" portions of the fund for purposes of determining the appropriate distribution in this case. Since there is only one fund from which competing claims are to be paid in this case, the marshaling doctrine is inapplicable.

■ Moreover, courts have generally held that the remedy of marshaling is unavailable to a creditor who holds an unsecured claim. See In re Brazier Forest Products, Inc., 921 F.2d 221, 223 (9th Cir. 1990); In re Packard Properties, Ltd., 112 B.R. 154, 158, 22 C.B.C.2d 1476 (Bankr.N. D.Tex.1990); In re Dealer Support Services Int'l, 73 B.R. 763, 764, 15 B.C.D. 1274, 17 C.B.C.2d 146 (Bankr.E.D.Mich.1987); Price, 50 B.R. at 230. Because the Benefit Funds' claims are unsecured, the Court cannot invoke the marshaling doctrine for their aggrandizement.

■ A third flaw in the Benefit Funds' marshaling theory is their failure to allege and prove that the MESC, which would bear the cost of the distribution scheme the Benefit Funds advocate, could recover the balance of its claim from other funds. As we noted in Price, 50 B.R. at 230, the marshaling doctrine should not be invoked where to do so would operate to the detriment of the other creditor. See also Meyer v. United States, 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963) (marshaling "deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties"); In re St. Cloud Tool & Die Co., 533 F.2d 387, 391 (8th Cir.1976) ("[i]t is clear that the doctrine of marshaling may not be invoked where prejudice will accrue to other parties"); In re Century Brass Products, Inc., 95 B.R. 277, 279, 19 B.C.D. 68 (D.Conn.1989) ("[t]he doctrine of marshaling applies only to situations in which the creditor who would be compelled to avoid satisfying its debt from certain funds would not be prejudiced"). We therefore reject the Benefit Funds' argument that the marshaling doctrine should be applied in this case.[9]

Based on the foregoing, an order will enter overruling the Benefit Funds' objection to the trustee's final report.

**8.** Although we agree with the Benefit Funds that Darnell, a case upon which the trustee heavily relied, is not generally on point, the various distribution schemes which the Sixth Circuit outlined do support our conclusion that the Benefit Funds' "two-fund" theory is inapposite.

**9.** The Benefit Funds argued in the alternative that the trustee was "[a]t best, ... entitled to

share, pro rata, with the [Benefit Funds] under § 724." We likewise reject this argument, as there is no indication that distribution under § 724(b)(2) is to be other than in accordance with the priority established by § 507(a). Compare 11 U.S.C. § 726(b) (requiring pro rata payments only of those claims at the same level of priority under § 507(a)).