In re BANKRUPTCY ESTATE OF
MARKAIR, INC., Debtor.

North Slope Borough, Appellant,

v.

William Barstow, III, Trustee for the
Bankruptcy Estate of MarkAir,
Inc., Appellee.

In re Bankruptcy Estate of
MarkAir, Inc., Debtor.

Municipality of Anchorage, Appellant,

v.

William Barstow, III, Trustee for the
Bankruptcy Estate of MarkAir,
Inc., Appellee.

Nos. 01–35892, 01–35901.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 2002.

Filed Oct. 21, 2002.

David D. Clark, Law Office of David D. Clark, Robert P. Crowther, Law Office of Robert Crowther, and William A. Greene, Municipal Attorney, Municipality of Anchorage, Anchorage, AK, for the appellants.

John C. Siemers, Burr, Pease & Kurtz, Anchorage, AK, for the appellee.

Before: B. FLETCHER, ALARCÓN, and GRABER, Circuit Judges.

GRABER, Circuit Judge.

North Slope Borough and the Municipality of Anchorage (Creditors) held tax liens

on real property formerly owned by MarkAir, Inc., a Chapter 7 bankruptcy debtor. The Creditors seek part of the proceeds from a sale of that property by the debtor's estate. The Trustee of the estate, William Barstow, seeks to subordinate the Creditors' tax-lien claims entirely to the claims of priority unsecured creditors pursuant to § 724(b) of the Bankruptcy Code, 11 U.S.C. § 724(b). We hold that, under § 724(b), priority unsecured creditors have a right to obtain only that portion of the proceeds equaling the amount of the tax liens; any remaining proceeds go first to junior lien claimants, then to the holders of the tax liens insofar as their claims were not already satisfied and, finally, to the estate. In the circumstances, the Creditors are entitled to a share of the proceeds. Accordingly, we reverse the contrary decision of the district court and reinstate the decision of the bankruptcy court.

## FACTUAL AND PROCEDURAL BACKGROUND

In June of 1992, MarkAir filed for bankruptcy under Chapter 11. After an unsuccessful reorganization, the case was converted to a Chapter 7 proceeding. The Trustee then sold several parcels of real property owned by the estate. Those parcels were subject to a number of liens, including tax liens held by the Creditors.

The Creditors asserted their right to a share of the proceeds from the sale. The Trustee refused to pay them, citing 11 U.S.C. § 724(b) and arguing that the Creditors' claims were completely subordinate to the claims of certain priority unsecured creditors (namely, those who incurred administrative expenses and those who held unusable MarkAir tickets).[1]

Those unsecured claims amounted to several million dollars.

The bankruptcy court, relying on the text of § 724(b) and cases and secondary authorities interpreting it, rejected the Trustee's construction and awarded the Creditors a share of the sale proceeds. The district court reversed, holding that § 724(b) required *complete* subordination of tax-lien claims to priority unsecured claims. The Creditors filed timely notices of appeal.

## STANDARDS OF REVIEW

We review de novo the district court's decision on an appeal from a bankruptcy court. *Neilson v. Chang (In re First T.D. & Inv., Inc.)*, 253 F.3d 520, 526 (9th Cir. 2001). We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *Id.* We review de novo questions of statutory construction. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819(9th Cir.2001).

## DISCUSSION

A. *Finality*

■ After concluding that the bankruptcy court improperly compelled payment of the Creditors' claims, the district court remanded the case for a determination of the amount of interest due on the Trustee's refund claim. Nonetheless, the Creditors assert that the district court's decision is final for the purpose of appellate review. Although the Trustee does not object to our hearing this appeal, parties may not confer jurisdiction by agreement. We must consider independently whether appellate review is permissible at this point

---

1. The administrative claims fall under § 507(a)(1) of the Bankruptcy Code, and the ticket holders' claims fall under § 507(a)(6).

*See* 11 U.S.C. § 724(b)(2) (prioritizing such claims).

in the bankruptcy proceedings. *Dominguez v. Miller (In re Dominguez)*, 51 F.3d 1502, 1506 (9th Cir.1995).

■ Typically, a district court's decision is final when it affirms or reverses a bankruptcy court's final order. *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1038 (9th Cir.2000). Difficult questions regarding finality sometimes arise when, as here, a district court reverses a final order of a bankruptcy court but also remands for further proceedings. *Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'ship)*, 2 F.3d 899, 904 (9th Cir.1993), *cert. dismissed*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). We resolve such questions of finality through a pragmatic approach; a district court's decision can be considered final for the purpose of appellate review even when a question has been remanded to the bankruptcy court. *See Lundell*, 223 F.3d at 1038(holding that the appellate court had jurisdiction despite a remand to the bankruptcy court for "more specific findings of fact and for further proceedings to apply the correct burden of proof"); *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250(9th Cir. 1995) (holding that the court had jurisdiction despite a remand to the bankruptcy court for entry of an order allocating the amount and extent of tax liens).

■ If the matters on remand "concern primarily factual issues about which there is no dispute, and the appeal concerns primarily a question of law, then the 'policies of judicial efficiency and finality are best served by our resolving the question now.'" *Id.* (quoting *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 911 (9th Cir.1988)). On the other hand, if "the district court remands for further factual findings related to a central issue raised on appeal," the district court's decision is usually not final. *Bonner Mall P'ship*, 2 F.3d at 904. Even when the remand involves factfinding on a central issue, we may nonetheless exercise jurisdiction "if that issue is legal in nature and its resolution either (1) could dispose of the case or proceedings and obviate the need for factfinding; or (2) would materially aid the bankruptcy court in reaching its disposition on remand." *Lundell*, 223 F.3d at 1038 (citing *Bonner Mall P'ship*, 2 F.3d at 904).

In this case, the remand required the bankruptcy court to determine the amount of interest to which the Trustee is entitled on his refund claim. That question is only tangentially related to the central legal issue on appeal, namely, whether the Trustee is entitled to any refund at all. Further, even if the amount of interest could be characterized as a central issue, appellate review would be appropriate because our reversal of the district court's opinion would "dispose of the case or proceedings and obviate the need for factfinding." *Id.* Thus, under this circuit's pragmatic approach, we may regard the district court's decision as final. We turn, then, to the merits.

B. *Statutory Text*

Section 724(b) provides:

Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, *to the*

*extent of the amount of such allowed tax claim that is secured by such tax lien;*

(3) third, to the holder of such tax lien, *to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;*

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, *to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection;* and

(6) sixth, to the estate.

11 U.S.C. § 724(b) (emphasis added).

 A paragraph-by-paragraph analysis of § 724(b) reveals that the Creditors' interpretation of the statute is much more persuasive than the Trustee's.

- Paragraph (b)(1) requires the Trustee first to pay nontax liens that would be senior in priority to tax liens even in the absence of § 724(b).[2]

- Paragraph (b)(2) requires the Trustee next to pay the claims of certain priority unsecured creditors, enumerated in paragraphs 507(a)(1) through (a)(7) of the Bankruptcy Code. 11 U.S.C. § 507(a)(1)-(7). However, paragraph (b)(2) also contains a limiting clause, allowing payment of these claims only "to the extent of the amount of such allowed tax claim that is secured by such tax

lien." 11 U.S.C. § 724(b)(2). In other words, the priority unsecured claims are to be paid only up to the amount of the subordinated tax lien. If the priority unsecured claims are less than or equal to the amount of the tax lien, they are paid in full. On the other hand, if the priority unsecured claims exceed the amount of the tax lien, they are paid only in part, up to the amount of the tax lien. Even the Trustee accepts this preliminary construction of paragraph (b)(2), although he argues that the limiting clause in that paragraph provides merely "a definition."

- Third, in certain circumstances the Trustee must pay part of the tax lienholder's claim under paragraph (b)(3). If the amount of priority unsecured claims exceeds the amount of the tax lien, the tax-lien claimant receives nothing under this paragraph.[3] However, if the amount of the tax lien exceeds the amount of priority unsecured claims, the tax-lien creditor must be paid the difference between these two amounts. As the bankruptcy court explained, "if the priority expenses in the second category do not eat up all of the tax lien, the balance of that tax lien is then paid" to the tax lienholder.

- Fourth, under paragraph (b)(4), the Trustee must pay the claims of junior nontax lienholders.[4] Because the full amount of the tax lien, and *only* the full amount of the tax lien, is paid out under paragraphs (b)(2) and (b)(3), the junior lienholder's position

---

**2.** In this case, there were no nontax liens senior to the tax liens and, thus, § 724(b)(1) is inapplicable.

**3.** Here, the priority unsecured claims exceed the amount of the tax lien and, thus, the tax

lienholders are entitled to nothing under § 724(b)(3).

**4.** In this case, each of the parcels of property was subject to a junior non-tax lien in the form of a mortgage or mechanic's lien.

is affected neither positively nor negatively by the subordination of tax claims under § 724(b). In essence, junior lienholders occupy the same position that they otherwise would have in the absence of the statute.

- Fifth, under paragraph (b)(5), the Trustee must pay the tax lienholder. The amount of this payment varies depending on whether the tax lienholder received any proceeds under paragraph (b)(3). If no proceeds were distributed under that paragraph, the tax lienholder receives the full amount of the tax lien under paragraph (b)(5). On the other hand, if proceeds were distributed under paragraph (b)(3), the tax lienholder must subtract the amount of the (b)(3) distribution from the full amount of the tax lien and is paid only the reduced amount under paragraph (b)(5). As the bankruptcy court explained, "to the extent the tax lienor did not recover the amount of its otherwise allowable tax lien under the *third* category, the tax lienor gets reimbursed" in the fifth category. It is with respect to the operation of this paragraph and paragraph (b)(6) that the Trustee parts company with the Creditors.
- Finally, under paragraph (b)(6), the Trustee must pay whatever proceeds remain to the estate of the bankruptcy debtor. These funds are distributed in accordance with the priority rules applicable to estate assets. 11 U.S.C. § 726.

The Trustee contests this reading of the statute. Although he essentially agrees with the Creditors' interpretation of the preliminary order of distribution under paragraphs (b)(1) through (b)(4), the Trustee challenges the Creditors' interpretation of paragraph (b)(5). He asserts that, if the priority unsecured claims exceed the amount of the tax lien, the tax-lien claimant is not entitled to *any* payment of proceeds from the sale pursuant to paragraph (b)(3) *or* paragraph (b)(5) until the priority unsecured claimants are paid in full. Thus, he argues for a result in which—in substance—the subordinated tax-lien creditor is relegated to a § 507(a)(7–1/2) priority. Unfortunately for the Trustee, Congress failed to write § 507(a) (7–1/2) into the statute.

Further, Congress easily could have written § 724(b) in such a way as to mandate the result sought by the Trustee but, instead, chose to express a different order of distribution. Had Congress intended for tax-lien claims to be subordinated completely to all priority unsecured claims, it could have (for example) inserted an additional paragraph between (b)(4) and (b)(5) stating that the distribution thereafter made to junior lienholders would be made "to the holder of any claim of the kind specified in § 507(a)(1)-(7) to the extent that such holder's claim was not paid under paragraph (2) of this subsection." Congress did not include such a provision, and we are not at liberty to insert one. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 590 (9th Cir.1981) ("[A] court should not add language to an unambiguous statute absent a manifest error in drafting or unresolvable inconsistency."). The statute must be read as it was written.

Moreover, the Trustee's proposed interpretation of the statute requires an inconsistent interpretation of the limiting clause in paragraph (b)(2). The Trustee concedes that, because priority unsecured creditors are entitled to a preliminary distribution only "to the extent of the amount of such allowed tax claim that is secured by such tax lien," junior secured claimants are paid under paragraph (b)(4) *immediately* after the full amount of the tax lien is spent on

claims paid under paragraphs (b)(2) and (b)(3). 11 U.S.C. § 724(b)(2). However, the Trustee also argues that the tax-lien claimant is not then paid under paragraph (b)(5) but, instead, that priority unsecured claimants are paid under paragraph (b)(2) without limitation as to the amount of the distribution. That proposed interpretation of § 724(b) imposes one meaning on the quoted clause in (b)(2) when distributions under paragraph (b)(4) are at issue (viz., a limitation on the amount of the distribution), but another meaning when distributions under paragraph (b)(5) are at issue (viz., no limitation on the amount of the distribution). Said another way, under the Trustee's formulation, this clause limits the distribution for priority unsecured claimants to the amount of the tax lien, so that junior-lien claimants may then be paid under paragraph (b)(4) and thereby retain the same position that they would occupy in the absence of § 724(b). However, the identical phrase in paragraph (b)(2) does not limit the amount distributed to priority unsecured claimants with respect to tax-lien claimants paid under (b)(5). The Trustee cannot have it both ways. *Montero–Martinez v. Ashcroft*, 277 F.3d 1137, 1142 (9th Cir.2002) ("[W]here Congress uses the same word or phrase throughout a statute, Congress generally intends the word or phrase to have the same meaning each time Congress uses it.").

The Trustee also argues that the words "any holder" in paragraph (b)(2) mean "all holders." That is, he argues that these words evidence a congressional intent to require payment of *all* priority unsecured claims before payment of *any* tax-lien claims. We see no reason to make a textual revision. Nor would such a revision

help the Trustee, because the phrase "any holder" is subject to a limiting clause: Distribution is to be made under paragraph (b)(2) to "any holder ... *to the extent of the amount of such allowed tax claim.*" 11 U.S.C. § 724(b)(2) (emphasis added).

Finally, the Trustee's interpretation of the statute results in a "hopscotch" approach to distributions governed by § 724(b): A bankruptcy trustee must make four sequential distributions under the first four paragraphs of § 724(b), yet the trustee may proceed from paragraph (b)(4) to paragraph (b)(5) only if all priority unsecured claims have been paid in full. If such claims exceed the amount of the tax lien, the trustee is required instead to jump from paragraph (b)(4) back to paragraph (b)(2). After all priority unsecured claims are paid pursuant to that paragraph, the trustee is to jump back to paragraph (b)(5) and distribute funds to the tax-lien claimant.

The statute simply is not susceptible to such a construction. Subsection (b) clearly states that "proceeds of such property[ ] *shall be distributed* ... first, ... second, ... third, ... fourth, ... fifth, ... and ... sixth." 11 U.S.C. § 724(b) (emphasis added). The text requires that distributions be made in the prescribed order and makes no allowance for revisiting any of the prior paragraphs in the event that certain classes of creditors are not paid in full.

### C. *Precedent*

■ Those few courts that have interpreted § 724(b) in circumstances similar to those presented here have adopted the Creditors' reading of its text.[5] The most

---

**5.** The Trustee cites a number of decisions that he claims call this interpretation of the statute into question. *See, e.g., Gingold v. United States (In re Healthcare Servs., Inc.),* 80 B.R. 563, 565 (Bankr.N.D.Ga.1987); *Daniel v. United States (In re R & T Roofing Structures & Commercial Framing, Inc.),* 42 B.R. 908, 913, 915 (Bankr.D.Nev.1984). However,

persuasive of the relevant decisions is *In re Atlas Commercial Floors, Inc.*, 125 B.R. 185, 187 (Bankr.E.D.Mich.1991), in which the court explained:

> We note at the outset that § 724(b)(2) expressly limits the amount distributable to § 507(a) claimants to the "amount of such allowed tax claim that is secured by such tax lien." In light of this qualification, it is clear that administrative and priority claimants are able to prime a tax lienholder under § 724(b)(2) only to the extent of the tax lien; *if, as in this case, the sum of administrative and priority claims exceeds the amount of the tax lien, the excess amount is relegated to § 724(b)(6) status* and paid in accordance with § 726. To hold otherwise would render meaningless the limiting language in § 724(b)(2).

(Emphasis added.); *see also King v. Bd. of Supervisors of Fairfax County (In re A.G. Van Metre, Jr., Inc.)*, 155 B.R. 118, 123 (Bankr.E.D.Va.1993) (holding that priority unsecured claimants are entitled to payment "only to the extent of the amount of the tax liens. Then if [such] claims happen to equal or exceed the amount of statutory tax liens, the statutory tax liens are paid behind the claims of junior consensual lien-holders."); *Hargrave v. Township of Pemberton (In re Tabone)*, 175 B.R. 855, 860, 862 (Bankr.D.N.J.1994) (setting forth a distribution in which the tax-lien claimant received payment under § 724(b)(5) even though priority unsecured claims remained unpaid); *Marc Stuart*

*Goldberg, P.C. v. City of New York (In re Navis Realty, Inc.)*, 193 B.R. 998, 1004 (Bankr.E.D.N.Y.1996) ("[I]t is important to note that the *aggregate* amount of the payments to the holders of the priority claims under 11 U.S.C. § 724(b)(2) cannot exceed the amount of the tax lien."). Thus, as the *Atlas* court noted, the statute on its face requires that tax-lien claimants be paid under § 724(b)(5) even when priority unsecured claimants have not been paid in full. *Atlas*, 125 B.R. at 187.

### D. Conclusion

■ In sum, we agree with the Creditors: The express text of § 724(b) subordinates the interests of tax lienholders to that of priority unsecured creditors, but only up to the total amount of the tax lien. Any remaining proceeds are to be distributed first to junior lien claimants, next to the tax lienholders and, finally, to the debtor's estate. Because the text of the statute is clear, we need not explore legislative history. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("When the words of a statute are unambiguous, then, ... judicial inquiry is complete." (citation and internal quotation marks omitted)); *FDIC v. County of Orange (In re County of Orange)*, 262 F.3d 1014, 1018 (9th Cir. 2001) ("In construing a statute, we first consider its text. When the statute's language is plain, the sole function of the courts—at least where the disposition re-

---

there is no indication in these cases that the amount of the tax lien was insufficient to pay in full the claims of all priority unsecured creditors. When this factor is removed from the equation, these cases stand for the unremarkable proposition that priority unsecured claims are paid before tax-lien claims when the amount of the tax lien is greater than the amount of the unsecured claims.

The one exception is *In re American Zyloptic Co.*, 181 F.Supp. 77 (E.D.N.Y.1960), which

appears to adopt the Trustee's interpretation of the statute. However, this case is unpersuasive. In addition to providing little explanation for its result, *American Zyloptic* interprets § 67(c) of the Bankruptcy Act, a statute predating the enactment § 724(b). *See* 11 U.S.C. § 107(c) (amended 1978). Although the two statutes are similar in some respects, Congress altered the text significantly when it drafted § 724(b) in 1978. *Id.*

quired by the text is not absurd—is to enforce it according to its terms." (citation and internal quotation marks omitted)). The district court misapprehended the plain meaning of § 724(b), while the bankruptcy court correctly construed the statute.

The judgment of the district court is, therefore,

REVERSED.